KNOX COUNTY FEED AND HATCHERY INC. ET AL. *v.* IVERS ET AL.

[No. 19,268. Filed March 31, 1960.]

482

*James J. Stewart, Samuel A. Fuller, Richard W. Guthrie* and *Murray, Mannon, Fairchild & Stewart,* of counsel, all of Indianapolis, for appellants.

*Bredell, Cooper & Martin* and *C. Wendell Martin,* of Indianapolis, for appellee, Meridian Mutual Insurance Co.

COOPER, J.—This is an appeal from the Industrial Board of Indiana, hereinafter referred to as "Board," wherein said Board rendered an award against the appellants herein, Knox County Feed and Hatchery, Inc. and the Casualty Reciprocal Exchange. The usual procedure was pursued by the filing of Board's Form #10 and answer thereto, a hearing by a Single Board Member and a review by the Full Board. The controversy is, and was between the appellant, Casualty Reciprocal Exchange and the Meridian Mutual Insurance Company and appellee with regards as to what insurance company is liable for the award granted by the Board as compensation.

The record discloses no dispute as to the facts. A concise statement of those most favorable to the appellee, Meridian Mutual Insurance Company, is that one Alva Ivers was killed on the 13th day of July, 1957, as the result of personal injuries received by him by reason of an accident arising out of and in the course of his employment as a truck driver, leaving surviving him a widow and four children, all under the age of ten years.

The record discloses several pertinent exhibits that were introduced into the evidence which we do not deem necessary to set forth. The evidence also reveals that during the period from July 11, 1956 to July 11, 1957, the Knox County Feed and Hatchery, Inc. had work-

men's compensation insurance with the Meridian Mutual Insurance Company; that prior to the expiration date of said insurance contract on July 11, 1957, the Meridian Mutual Insurance Company, pursuant to a company policy with their practice of anticipating a renewal of said policy, prepared and forwarded to their agent, on June 25, 1957, the renewal policy, and, about the same time, filed Form #18 with the Board; that on or about July 2, 1957, the agent for the Meridian Mutual Insurance Company, having received the renewal policy from the home office, attempted to renew the contract of insurance between the Meridian Mutual Insurance Company and Knox County Feed and Hatchery, Inc. by attempting to deliver said renewal contract, which was to be effective on July 11, 1957, the expiration date being one year later, to the said Knox County Feed and Hatchery, Inc. The Knox County Feed and Hatchery, Inc. refused to renew said contract of insurance stating that they had placed the insurance with the Casualty Reciprocal Exchange for the period beginning July 11, 1957, and ending July 11, 1958; thereafter, the Meridian Mutual Insurance Company's agent returned the refused contract of insurance to the home office. The Meridian Mutual Insurance Company, after receiving the returned policy and finding no Industrial Board form to meet this particular situation, filed Form #49 of said Board, which is the form used as a notice of cancellation.

The two insurance companies involved herein by stipulation agreed there is no controversy as to either the fact or the amount of compensation due or the persons entitled thereto. They further stipulated that "the sole issue to be decided by the Board is whether Meridian Mutual Insurance Company is liable to the plaintiff along with the Casualty Reciprocal Exchange for the

workmen's compensation benefits due and owing plaintiff under the Workmen's Compensation Act of the state of Indiana." By this stipulation, both insurance companies requested the Industrial Board of Indiana to resolve the dispute between them as to each company's liability, if any, for the workmen's compensation benefits due and owing to the dependents of the decedent under the compensation law of Indiana, as awarded by the Board. The Industrial Board, after permitting the introduction of the various exhibits and hearing oral testimony, resolved this question against the appellant, the Casualty Reciprocal Exchange, and this appeal followed.

The appellant's assignment of error is that the award of the Full Board is contrary to law, which is a sufficient assignment to present all questions.

The appellant in his argument first maintains that "The Industrial Board erred in receiving evidence tending to show that the policy issued by the Meridian Mutual Insurance Company was not binding."

With this contention of the appellant we cannot agree, for this court has held in Industrial Board appeals, "Evidence is that which tends to produce conviction in the mind as to the existence of a fact, *The Evansville, etc., Railroad Co.* v. *Cochran* (1858), 10 Ind. 560, *and the existence of any fact relative to the issue may be proved. Newell* v. *Downs* (1847), 8 Blackf. 523." (Our emphasis.) *Magazine* v. *Shull* (1945), (T. D. 1945), 116 Ind, App. 79, 60 N. E. 2d 611. Furthermore, if such evidence were incompetent, it would not be reversible error but only harmless error under the evidence in the record now before us. The general principle of law in compensation cases is that the admission of incompetent evidence by the Board will not work a reversal of the award when there is other

competent evidence to support it, the admission of such incompetent evidence being regarded in such a case as harmless error. *Holliday* v. *National Malleable, etc., Co.* (1932), 95 Ind. App. 303, 183 N. E. 407; Small's Workmen's Compensation Law of Indiana, p. 386, point 95, and the many authorities cited therein. Also, we cannot fail to note, nor could the Industrial Board, under the evidence before it relating to the liability under the policy in dispute ignore, the fact that the present situation was not one wherein the insurance company was terminating their coverage by cancellation, but the situation was one in which the insurer was willing to renew but the employer refused to accept or renew, and, since the statutes permit the Board to make their award against either the employer or the insurer, or both, any of the evidence relative to this issue would be competent under §40-1605, Burns' 1952 Repl.

The appellant in his argument secondly maintains that "The only probative evidence which the Industrial Board could consider consisted of its own records, which conclusively showed that the Knox County Feed and Hatchery, Inc. was insured by both Meridian Mutual Insurance Company and Casualty Reciprocal Exchange." This, of course, is not the law; the strict rules of evidence are not observed in a summary proceeding before the Industrial Board. *Patton Park, Inc.* v. *Anderson* (1944), 222 Ind. 448, 53 N. E. 2d 771; *Inland Steel Co.* v. *Pigo* (1932), 94 Ind. App. 659, 182 N. E. 279. It is not only within the province of the Board, but it is their duty under our statutes, to determine in the first instance the ultimate facts of the cause before it. The issue before the Board being the amount of liability, if any, of the two insurance companies was in dispute and the existence of any fact relative to that

issue may be proven and, of course, would be evidence of probative value. *Magazine* v. *Shull, supra.*

The appellant in his argument under Proposition II first maintains that "Where an employer has two insurance policies which are in effect at a time of a loss under the Indiana Workmen's Compensation Act each insurer is equally liable to the employee or his beneficiaries." We agree with this general statement of law made by the appellant; however, the Board found that there was only one insurance policy in effect, namely that of the appellant's, at the time of the death of the decedent.

We heretofore have not been called upon to review and decide the precise question involved herein. The appellee has called our attention to the case of *Employers Mutual Liability Insurance Co.* v. *Howard* (1956), — Tex. Civil App. —, 286 S. W. 2d 302, which we believe is directly in point with the matter now before us and correctly states the law applicable in this matter. At p. 304, the Texas Court stated:

"A comprehensive statement is necessary. Appellant had issued a workmen's compensation insurance policy to the employer, which policy expired under its terms on November 8, 1953, some two months before Richard P. Howard sustained an accident resulting in his death while engaged in the discharge of his duties as an employee. It is true that appellant had tendered said employer its renewal policy for one year covering the period from November 8, 1953 to November 8, 1954, but the employer refused to accept such renewal policy *or to file notice with the Industrial Accident Board that Employers Mutual, appellant here, carried said workmen's compensation insurance;* however, the employer took out a workmen's compensation insurance policy with General American covering said period from November 8, 1953 to November 8, 1954, and this policy was in effect on January 12, 1954, and the employer filed notice with the Industrial

Accident Board that this employer had become a subscriber to the workmen's compensation act with General American. Prior to January 12, 1954 General American attempted to file with the Motor Transportation Division of the Railroad Commission of Texas a certificate that it had issued such policy, but said Motor Transportation Division refused to permit the cancellation of such certificate previously filed by Employers Mutual for lack of ten days' notice of cancellation, even though General American notified the Railroad Commission prior to January 12, 1954 that Employers Mutual was no longer on the risk but General American took over the risk on November 8, 1953, and tendered to the Railroad Commission its certificate that it had taken over such risk."

Then at page 306, the court sums up the applicable law:

"Going back to appellant's Point 1 and 2, the first major question that must claim our attention is: Was the Employers Mutual Liability Insurance Company of Wisconsin the carrier of the risk incident to the Shaw Transport or Shaw Oil Company at the time Richard P. Howard received the injuries resulting in his death? Our view is that it was not.

" (1, 2) It is true that Employers Mutual offered to renew its contract to carry the risk, but such offer was rejected and the policy was returned by mail by the employer and it proceeded to recover its risk by taking out a policy with the General American. *This it had the right to do under our doctrine of free enterprise,* notwithstanding the rules and regulations in force by the Motor Transportation Division of the Railroad Commission of Texas. We think the rule in Texas is that when the employer received the renewal policy tendered by Employers Mutual, and when the employer refused to accept such policy and rejected it, and evidenced such rejection by so advising the Employers Mutual by letter and returning the policy through the United States mail, that the posting of such letter and the return of the

policy was a complete and final rejection and terminated all liability or duty that the Employers Mutual owed to the employer by virtue of its offer to renew its liability as provided in the renewal policy so tendered. We think we are supported in this view by the opinion of our Supreme Court in Houston Fire & Casualty Insurance Co. v. Pritchard & Abbott, Tex., 283 S. W. 2d 728, points 2 and 3. See also Southland Life Ins. Co. v. Greenwade, Tex. Civ. App., 143 S. W. 2d 648, Id., 138 Tex. 450, 159 S. W. 2d 854. *Since the policy of insurance tendered by Employers Mutual to the employer covering the period from November 8, 1953 to November 8, 1954 was refused and returned by the employer and never went into effect, we are unable to see how any liability could accrue on a contract that was nonexistent.* When the employer refused to accept the renewal policy from Employers Mutual, it, about the same time, took out a policy of workmen's compensation insurance with the General American, and that policy, under the undisputed facts, was in full force and effect at the time Richard P. Howard received the injuries resulting in his death. *"As we understand appellees' position, their only basis for holding Employers Mutual on the risk is that it filed certificate of insurance with the Motor Transportation Division of the Railroad Commission, showing that it had issued to the employer its policy covering workmen's compensation and employer's liability insurance from November 8, 1953 to November 8, 1954, and that said policy may not be compelled without mailing written notice to the Motor Transportation Division of the Railroad Commission stating when not less than ten days thereafter such cancellation should be effective. The vice in this contention is that this case does not involve an attempted cancellation of a policy. On the contrary, it involves the expiration of a policy by the lapse of the policy term for which it was written long before the injury in question occurred.* The Railroad Commission no doubt was led astray by its regulation that a policy on a certified carrier cannot be cancelled without giving ten days' notice. *It is our view that such ten days' notice is not required and cannot be required when*

*a policy of one company runs its full course of time and a policy written by another company is substituted therefor.* Otherwise, the Railroad Commission and its agency would be empowered to make contracts between the parties where there was no meeting of the minds and absent mutuality. Moreover, the Railroad Commission was notified that General American was on the risk, and that Employers Mutual policy had not been accepted by the employer since November 8, 1953; and the General American attempted to file its certificate of insurance showing that it was the workmen's compensation carrier on the employees of Shaw Transport and Shaw Oil Company from November 8, 1953 to November 8, 1954 with the Motor Transportation Division of the Railroad Commission, which certificate the Transportation Division refused to accept. In so doing the Commission followed the theory that it must have ten days' notice of the cancellation of the policy of the Employers Mutual. It is true the Railroad Commission, under Art. 911b, sec. 13, Vernon's Ann. Civ. Stats., has the right to require a carrier to carry workmen's compensation insurance on its employees; however, *it has no right to extend the term of an expired policy or to create and vitalize a renewal contract that the employer rejected and returned to the former carrier.* Nor can it place insurance risks on one insurance company by refusing to recognize substitution of another insurance company on the risk where the policy of insurance issued by the first insurance company has expired and the proffered renewal thereof has been rejected.

"(3) Since the Employers Mutual Insurance Company of Wisconsin did not have a contract of insurance in force and was not carrying the risk of the employer at the time Richard P. Howard met his death, it has no liability herein and the Industrial Accident Board was without authority to make an award against it, and likewise the trial judge was without authority to make any award against it, and the action in so doing must be reversed. . . ." (Our emphasis.)

This was a question of ultimate fact decided by the Board. The appellant has lost sight of the fact that it was prior to the 1943 amendment that paragraph (e) of §40-1605, Burns' read, "Any termination of the policy either by cancelation or expiration shall not be effective as to employees of the insured covered hereby until ten days after written notice of such termination has been received by the Industrial Board of Indiana at its office in Indianapolis, Indiana." Under the law prior to the 1943 amendment, as set forth above, we believe it would have been possible for the Board to have found both insurance carriers equally liable, with the employer, for the amount of the award. However, under the evidence in the record now before us, coupled with the provisions of amended paragraph (e) and added paragraph (f) by the 1943 amendment of §40-1605, Burns', which we set forth below, the Board had the authority to reach the conclusion they did.

"(e)   Any termination of this policy by cancelation shall not be effective as to employees of the insured covered hereby unless at least ten (10) days prior to the taking effect of such cancelation, a written notice giving the date upon which said termination is to become effective has been received by the industrial board of Indiana at its office in Indianapolis, Indiana.

"(f)   This policy shall automatically expire one (1) year from the effective date thereof and such termination shall be effective as to the employees of the insured covered hereby.

"All claims for compensation, nurse's charges, hospital services, hospital supplies, physician's fees or burial expenses may be made directly against either the employer or the insurer or both, and the award of the industrial board may be made against either the employer or the insurer or both. . . ."

The appellant in his argument under Proposition II secondly maintains that "Jurisdiction of the Industrial Board is limited and should not be enlarged to permit adjudication of legal or equitable rights between insurance companies."

It is elementary that the appellant cannot submit an issue to the Industrial Board of Indiana pursuant to our statutes by a stipulation of the parties as to the issue to be decided by the Board, and, after an adverse ruling, complain that the adjudication submitted determined only the legal or equitable rights between insurance companies.

Under §40-1509, Burns' 1952 Repl., which provides:

"All disputes arising under this Act, if not settled by the agreement of the parties interested therein, with the approval of the Board, shall be determined by the Board,"

the Industrial Board had the power to determine which insurer, if either, was on the risk at the time of the death of the decedent, as the employee, employer and insurance carrier are all within the purview of the foregoing Act which we have many times stated should be liberally construed to promote the ends intended to be secured by its enactment. *Bituminous Casualty Corp.* v. *Rorres etc. et al.* (1956), (T. D. 1956), 127 Ind. App. 4, 135 N. E. 2d 523.

Also, §40-1605, Burns', paragraph (f), which was in force and effect at the time the decedent met his death, provides, in part:

"All claims for compensation . . . may be made directly against either the employer or the insurer or both, and the award of the industrial board may be made against either the employer or the insurer or both."

The question of which insurer was on the risk at the time of the death of the decedent was placed squarely before the Industrial Board by Form #10, the ▮ answer thereto and Item Three of the stipulation of facts of the parties. The Board having the jurisdiction to make the award against either the employer or the insurer, or both, it would necessarily follow that they had the jurisdiction to determine, subject to review, the liabilities, if any, of the insurer.

In conclusion, we are of the opinion that had the Industrial Board held otherwise, they would have made and rendered an unconscionable award, as we are unable to see how any liability could accrue on a contract for insurance that was non-existent between any other parties.

Judgment of the Industrial Board is affirmed, with the usual penalty.

Ax, J., Myers, C. J., Ryan, J., concur.

NOTE.—Reported in 166 N. E. 2d 132.