### Richmond

FRANKLIN MORTGAGE CORPORATION, et al.

v.

JO C. WALKER, et al.

No. 0725-86

Decided April 5, 1988

Counsel

Stephen W. Robinson (McGuire, Woods, Battle & Boothe, on brief), for appellants.

Peter M. Sweeny (Thacher, Swiger, Sweeny & Day, on brief), for appellee Jo C. Walker.

John K. Coleman (Conrad A. Fontaine; Slenker, Brandt, Jennings & Johnston, on brief), for appellee Aetna Casualty & Surety Company.

Opinion

## ON REHEARING EN BANC

**DUFF, J.** — This appeal to the Court *en banc*, from an Industrial Commission award of compensation to Jo C. Walker, claimant, and a finding that Federal Insurance Company (Federal) was solely liable for payment thereof, presents the following issues: (1) whether the commission erred in finding that the claimant suffered an injury that arose out of and in the course of her employment; and (2) whether the commission erred in finding that Federal was the sole insurance carrier liable for the payment of benefits to claimant. Although both issues were briefed, only the latter issue was argued. However, pursuant to the provisions of

Code § 8.01-679.1, the failure to argue an issue raised on brief shall not constitute a waiver. Accordingly, we have considered both issues and affirm the final order of the Industrial Commission.

■ With respect to the compensability of Mrs. Walker's accident, the standard for our review is well settled. A finding by the commission that an injury arose out of, and in the course of employment, is a mixed question of law and fact, and is properly reviewable on appeal. *Dublin Garment Co. v. Jones*, 2 Va. App. 165, 167, 342 S.E.2d 638, 638 (1986). Findings of fact made by the commission will be upheld when supported by credible evidence. *Russell Loungewear v. Gray*, 2 Va. App. 90, 92, 341 S.E.2d 824, 825 (1986).

The record reveals that Mrs. Walker was employed by Franklin Mortgage Corporation (Franklin) on May 28, 1985 as an underwriter and branch manager of the company's Woodbridge, Virginia, office. Her duties required that she travel between this office and the company's main office in Fairfax, Virginia. She lived near the Woodbridge office. Her official working hours were from 9:00 a.m. to 5:00 p.m., but her schedule was flexible, and she frequently worked later in the evening. On May 28, 1985, at approximately 4:00 p.m., prior to leaving the Fairfax office, Mrs. Walker obtained a check for the rental payment on the Woodbridge office and a check for cleaning services for that office from Lynn McVicker, the president's wife and part-time bookkeeper. She was seriously injured in an automobile accident at 4:30 p.m. on Route 50, approximately one mile from the Fairfax office. Timothy Walker testified that at approximately 4:15 p.m. he spoke with his wife by telephone. She told him that she was going by the Woodbridge office and that she might be late getting home because it was raining heavily and that traffic "was a bear."

At the scene of the accident, Mrs. Walker's briefcase containing various business documents and the previously-mentioned checks were recovered.

■ The commission found that Mrs. Walker was injured during regular working hours while traveling between the Fairfax and Woodbridge offices in the course of her duties as a branch manager of the Woodbridge office. The fact that evidence exists from which a contrary conclusion might be drawn is of no consequence

if there is credible evidence to support the commission's finding. *Russell Loungewear v. Gray*, 2 Va. App. at 95, 341 S.E.2d at 826. There was credible evidence presented to support such finding. Accordingly, we find no error in the commission's award to Mrs. Walker.

Turning to the second issue involving the dispute between Aetna Casualty and Surety Company and Federal Insurance Company, the record contains the following factual background essential to an understanding of the problem presented: Prior to April 8, 1985, Franklin Mortgage Company (Franklin) carried its workers' compensation insurance with Aetna. On April 8, 1985, Franklin was purchased by N S & T Bank. At that time, N S & T Bank was insured by Federal under a policy which specifically provided for workers' compensation coverage for any business or corporation owned or acquired by N S & T Bank during the policy period. Consequently, Franklin automatically became insured by Federal on April 8, 1985, when Franklin was acquired by N S & T Bank. Federal, however, did not immediately notify the commission of this coverage as required by Code § 65.1-105. However, the parties do not dispute that as of April 8, 1985, Franklin was insured under both the Federal and the Aetna policies.

By letter dated June 11, 1985, Mr. Clarence Spiva, Senior Vice-President of N S & T Bank, instructed Aetna to cancel its policy covering Franklin, effective April 8, 1985. Both N S & T Bank and Aetna were aware of the claimant's accident on May 28, 1985. In fact, the employer, Franklin, had listed Federal's parent company, the Chubb Group, as the carrier on the employer's First Report of Injury filed with the Industrial Commission. Following N S & T Bank's instructions, Aetna cancelled the policy, effective April 8, 1985, and issued a premium refund for the period subsequent to that date. However, Aetna did not notify the Industrial Commission of the cancellation until October 9, 1985.[1]

---

[1] § 65.1-105. "Evidence of compliance with Act; notices of cancellation of insurance. - A. 1. Every employer subject to this Act shall file with the Industrial Commission, in form prescribed by it, annually or as often as may be necessary, evidence of his compliance with the provisions of § 65.1-104.1 and all others relating thereto. Every employer who has complied with the foregoing provision and has subsequently cancelled his insurance or his membership in a licensed group self-insurance association, as the case may be, shall immediately notify the Industrial Commission of such cancellation, the date thereof and the reasons therefor. Every insurance carrier or group self-insurance association shall in like manner notify the Industrial Commission immediately upon the cancellation of any policy

The commission held Federal solely liable to pay the award to the claimant.

The Virginia Supreme Court recently construed Code § 65.1-105 in *Hartford Co. v. Fidelity & Guaranty*, 223 Va. 641, 292 S.E.2d 327 (1982). In *Hartford*, Fidelity insured the employer, but cancelled the policy for nonpayment of premiums on April 11, 1980. Fidelity, however, failed to notify the commission of the cancellation, as required by Code § 65.1-105. After receiving notice of the cancellation, the employer obtained coverage from Hartford, which was in full force and effect on the date of the industrial accident, June 2, 1980. *Id.* at 643, 292 S.E.2d at 327-28.

■ On appeal Hartford argued that Fidelity was jointly liable for the workers' compensation award because Fidelity's failure to comply with the notice provisions of Code § 65.1-105 defeated its attempt to cancel the policy. The court, however, upheld the cancellation of the policy, citing the legislative intent behind the statute as being to protect a worker against a lapse in his employer's insurance coverage. The Court in *Hartford* noted that the statute served two purposes: (1) to give the employer an opportunity to acquire other insurance, and (2) to make it possible for the commission to timely invoke its enforcement authority under Code § 65.1-106. Since the coverage did not lapse, and the injured

issued by it or any membership agreement, whichever is applicable, under the provisions of this Act, except that a carrier or group self-insurance association need not set forth its reasons for cancellation unless requested by the Industrial Commission."

2. Every employer who cancels his insurance or his membership in a licensed group self-insurance association shall, prior to cancelling his insurance or his membership, give thirty days' written notice to his employees covered. Every employer who receives the notice required under subsection B of this section shall immediately forward a copy to his employees covered. Where the employer is a mine owner or operator the notice or copy of notice required to be given by this subsection shall also be given to the Chief Mine Inspector. The provisions of this subsection shall not apply with respect to a cancellation incident to a change of insurance or membership where no lapse of coverage occurs.

B. No policy of insurance hereafter issued under the provisions of this Act, nor any membership agreement in a group self-insurance association, shall be cancelled by the insurer issuing such policy or by the group self-insurance association cancelling such membership, whichever is applicable, except on thirty days' notice to the employer and the Industrial Commission, unless the employer has obtained other insurance and the Industrial Commission is notified of that fact by the insurer assuming the risk, or unless said cancellation is for nonpayment of premiums; then ten days' notice shall be given the employer and Industrial Commission.

worker's interests were fully served, the Court found Hartford solely liable for the loss.

In the present case, the commission's holding is in accordance with the purposes articulated in *Hartford* because there was adequate coverage for the claimant under Federal's policy. The commission's holding also finds support in opinions from other jurisdictions. In *Saracione v. Oliver Construction Co.*, 87 A.D.2d 926, 450 N.Y.S.2d 63 (1982), the court overruled a workers' compensation board decision finding dual coverage where a carrier failed to comply with the cancellation and notice provision of the compensation code. In language similar to that found in *Hartford*, the *Saracione* court stated:

> The purpose of the statutory notice requirement is to protect employers from an unexpected lapse of coverage, not to provide a windfall to subsequent insurers who have assumed the risk. Accordingly, since the employer had obtained other coverage, there was no need to impose the remedy of continued liability on American Mutual for its failure to comply with the notice requirement.

*Id.* at 926, 450 N.Y.S.2d at 64.

In *Hines v. Cherokee Lines, Inc.*, 509 P.2d 669 (Okla. 1973), the Oklahoma Supreme Court addressed the issue whether a carrier's failure to comply with the notice and cancellation statute would result in joint and several liability with the other carrier. The court construed a statute similar to Virginia's and stated:

> [W]hen . . . the employer and employee are protected by other insurance then the statute should not be rigidly construed so as to unjustly penalize an insurance carrier for its failure to strictly comply with the notice requirements. *Especially is this so where the employer himself has requested the cancellation and has procured insurance protection from another carrier.*

*Id.* at 671 (emphasis added).

■ Aetna concedes that it did not timely notify the commission of the cancellation of its policy by N S & T Bank. However, as in *Hines*, it urges that the purpose and intent of the statute have

been met since the claimant was not deprived of coverage or benefits and no hardship has been placed on Federal, as it has received a full premium for the period covering the claimant's industrial accident. *See Neeman v. Otoe County*, 186 Neb. 370, 183 N.W.2d 269 (1971); *St. Paul Fire & Marine Insurance Co. v. Central Surety & Insurance Co.*, 234 Ark. 160, 350 S.W.2d 685 (1961); *Knox County Feed & Hatchery Inc. v. Ivers*, 130 Ind. App. 481, 166 N.E.2d 132 (1960); *Musgrave v. Liberty Mutual Ins. Co.*, 73 Idaho 261, 250 P.2d 909 (1952); *Eurich v. General Casualty & Surety Co.*, 152 Md. 209, 136 A. 546 (1927). These cases recognize, as did *Hartford*, that statutes such as Code § 65.1-105 are designed to prevent employees from being left without compensation coverage. However, the cases also recognize that notification requirement statutes should not extend beyond the reason for their existence, and an insurer who accepted premiums should accept the loss, although strict technical cancellation by another carrier had not been accomplished. We agree.

The courts have allowed back-dated cancellation in situations where the rights of the employee and employer are fully protected. In *Hines*, the cancellation was retroactive, albeit only one day. In *Lane v. Cosmopolitan Mutual Insurance Co.*, 47 A.D.2d 183, 365 N.Y.S.2d 69 (1975), Cosmopolitan Mutual had issued a workers' compensation policy to Suval Industries. On April 9, 1969, Suval was merged into or absorbed by Whittaker Corporation, which was insured by Great American Insurance Company. The claimant was injured on April 11, 1969. A release and cancellation form was executed on April 17, 1969, cancelling the Cosmopolitan policy effective April 9, 1969. Although Cosmopolitan filed its notice of cancellation three and one-half months after the injury, the court affirmed the decision of the Workmen's Compensation Board and found Great American solely responsible for the award.

Federal, however, argues that the rights of the parties were fixed as of the date of the accident. While this proposition may be a valid statement of law under a different factual pattern, we believe it does not address the issue in dispute in this case. Here, Mrs. Walker's rights were her claim against her employer under the Workers' Compensation Act. Those rights were at all times fully protected by Federal's coverage. Mrs. Walker had no right to, nor would she receive any benefit from, double coverage.

■ At argument, it was suggested that Mrs. Walker might be prejudiced by the commission's opinion in the theoretical contingency of Federal becoming insolvent. However, this is a risk equally applicable to every workers' compensation claimant. The argument further ignores the Virginia Guaranty Fund, Code §38.2-1600 to 1623, which was enacted to provide for payments of "financial loss to claimants or policyholders resulting from the insolvency of an insurer." The fund is not a financial obligation of the Commonwealth, but rather is financed through the rates and premiums charged for insurance policies in this Commonwealth. Code § 38.2-1606 provides that the Guaranty Fund "shall pay the full amount of any covered claim arising out of a worker's compensation policy." We do not believe that the theoretical possibility of insolvency of Federal and that of the Guaranty Fund are legally cognizable detriments to Mrs. Walker.

With the rights of the claimant being fully protected, we see no legitimate basis upon which we or the commission could, or should, interfere with the rights of private contract between N S & T Bank (Franklin) and Aetna. Recognizing no need for two workers' compensation policies, the employer cancelled the Aetna policy effective April 8, 1985, and secured a refund of premium. Neither Federal nor the claimant had a right to expect N S & T Bank to continue paying premiums for Aetna's policy when the Federal policy provided identical coverage. To hold Aetna jointly liable for the award is to impose a liability for which Aetna received no premium. Consequently, such a holding would confer a windfall on Federal by reducing its liability by one-half, although it received a full premium for its exposure subsequent to April 8, 1985. The adage that "loss follows the premium" is applicable in this instance.

For the reasons stated, we find ample credible evidence in the record to support the final order of the Industrial Commission.

*Affirmed.*

Barrow, J., Benton, J., Cole, J., Coleman, J., Keenan, J., and Moon, J., concurred.

Koontz, C.J., with whom Baker, J. joins, concurring in part and dissenting in part.

I concur with the majority opinion holding that the claimant suffered an injury that arose out of and in the course of her employment. I respectfully disagree with the majority opinion holding Federal solely liable to pay the award to the claimant.

It is undisputed that on May 28, 1985, the day of the industrial accident, the employer was insured under both the Federal and the Aetna policies. Whether Federal or Aetna failed to comply with the notice of cancellation provisions of Code § 65.1-105 is a non-issue in this case. Federal failed to notify the commission of its coverage and properly concedes that its policy automatically became in full force and effect prior to the date of the industrial accident. Likewise, Aetna's failure to give notice of cancellation *after the date of the industrial accident* did nothing to alter the fact that its policy also was in full force and effect on the date of the industrial accident.

Similarly, our Supreme Court's decision in *Hartford Co. v. Fidelity and Guaranty, Inc.*, 223 Va. 641, 292 S.E.2d 327 (1982), relied upon by the commission and in part by the majority, is not dispositive in the present case. *Hartford* construes Code § 65.1-105 to prevent a lapse in insurance coverage so that the worker is protected. Lapse in coverage is not the issue here; rather the issue is dual coverage. I simply find no language in *Hartford* prohibiting dual coverage or suggesting that the commission has any authority to relieve one insurance company from liability and thereby prefer one company over another on the facts of the present case. In short, in my view a finding of adequate coverage by one company to protect the injured worker is not synonymous with a finding that dual coverage does not exist.

Consequently, the real issue in this case is whether there is any authority for the commission to permit Aetna to effectively terminate its policy after the date of the industrial accident and thereby to terminate its dual coverage with Federal. The majority reasons that since nothing in the record suggests that a back-dated cancellation is not standard practice in the insurance industry and because Aetna has returned its premium, that loss should follow the premium and Federal should assume full responsibility. Having learned of the industrial accident prior to returning the premium, it should surprise no one in the insurance industry that Aetna would forego these premiums in exchange for a back-dated cancellation of its policy. More importantly, for the majority to base

its holding that Aetna should not be held jointly liable for the award because Aetna has received no premiums simply ignores the fact that Aetna did receive premiums prior to the date of the accident. I agree with the majority that "the old adage that 'loss follows the premium' is applicable in this instance" and in this case that loss should follow the premium both to Federal and Aetna.

Finally, the majority properly concludes that Mrs. Walker's rights were fully protected by Federal's coverage. Again, however, the fact that she "had no right to, nor would she receive any benefit from, double coverage" does not provide a foundation on which to conclude that dual coverage in fact did not exist. Both policies were in full force and effect on the date of Mrs. Walker's industrial accident; that fact is simply not altered because she was fully protected by one of them or that she will receive no benefit from dual coverage.

If on the facts, as here, dual coverage existed and both companies share the loss, there must be some authority for the commission to place the entire loss on only one company. Finding no such authority, I would hold Federal and Aetna jointly liable for the loss under their policies which were in full force and effect on the date of Mrs. Walker's industrial accident.