COURT OF APPEALS OF VIRGINIA


Present:  Judges Frank, Clements and Senior Judge Coleman
Argued at Richmond, Virginia


NANCY J. MILLER

                                                          OPINION BY
v.        Record No. 0751-07-2                  JUDGE ROBERT P. FRANK
                                                          DECEMBER 11, 2007

POTOMAC HOSPITAL FOUNDATION AND
  RECIPROCAL OF AMERICA/VIRGINIA
  PROPERTY & CASUALTY INSURANCE
  GUARANTY ASSOCIATION


        FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

            Wesley G. Marshall for appellant.

            Bryan J. Olmos (Joseph F. Giordano; Semmes, Bowen & Semmes,
            on brief), for appellees.


        Nancy J. Miller (claimant) appeals a decision of the Workers' Compensation Commission

(commission), arguing that the commission erred (1) in finding that the deputy commissioner did

not have the jurisdiction to order the Virginia Property & Casualty Insurance Guaranty Association

(Guaranty Fund) to make payment to a medical provider when payment was already made by a

third-party insurer, (2) in invoking the doctrine of imposition to reverse a final opinion of the deputy

commissioner that was not appealed by Potomac Hospital Foundation (employer) or the Guaranty

Fund, and (3) in finding that penalties could not be assessed against the Guaranty Fund.  For the

following reasons, we reverse the decision of the commission and remand this case to the

commission for further proceedings consistent with this opinion.

BACKGROUND

Claimant suffered a compensable injury to her back on March 24, 2002. On July 22, 2005, the commission affirmed the deputy commissioner's award of medical benefits and temporary total disability benefits to claimant.

In 2006, claimant filed several applications for reimbursement of her out-of-pocket medical expenditures, including co-payments and prescriptions, and for payment of her treating physician, Dr. Cindy Zhang, in the amount of $95,030. That amount covered claimant's treatments over a four-year period beginning in June 2002.

A hearing on these claims took place before the deputy commissioner on May 11, 2006. At the hearing, the Guaranty Fund argued that, because claimant's private health insurance paid the claims from Dr. Zhang, it was not the Guaranty Fund's responsibility to make further payment.[1] The Guaranty Fund acknowledged that Dr. Zhang was treating claimant for her compensable injury.

On June 27, 2006, the deputy commissioner issued an opinion ordering employer and/or the Guaranty Fund to "attempt" to pay Dr. Zhang for claimant's treatments,[2] in the amount of

---

[1] There is some discrepancy in the record as to exactly how much money was still outstanding on claimant's account with Dr. Zhang, or exactly how much money medical insurance paid to Dr. Zhang. Based on our holding today, however, these factual discrepancies are not relevant.

[2] The deputy commissioner ordered the Guaranty Fund to "attempt" to pay Dr. Zhang based on a prior opinion of the commission, Parham v. J.P. Distributing, VWC File No. 195-39-78 (August 20, 2004). There, claimant had received treatment related to his compensable injury from two health care providers. The cost of these treatments had been paid by claimant's private health insurance, and no balance was outstanding. The commission ordered insurer to "attempt to make payments" to these providers, as this was the "logical solution to a situation where the insurer will be essentially making double payments." The commission reasoned that "the private health insurer's payments do not absolve the workers' compensation insurer of its responsibility," and the commission could not concern itself with whether the providers would accept insurer's payment and reimburse the private health insurer. The deputy commissioner in the instant case essentially adopted the reasoning in Parham in ordering the Guaranty Fund to attempt to pay Dr. Zhang.

–2–

$95,030, though these payments had already been made by claimant's private health insurance.[3] The deputy commissioner reasoned that, while the medical provider may be receiving a double payment, it remained the Guaranty Fund's responsibility to pay for these treatments. Whether the medical provider reimburses the private health insurer after receiving payment from the Guaranty Fund, or rejects the Guaranty Fund's payment because it has already received payment, were "issues that the Commission cannot order or enforce."

The Guaranty Fund had 20 days to appeal the decision by filing a request for review with the commission. The Guaranty Fund did not do so, nor did it pay Dr. Zhang. Instead, on July 20, 2006, the Guaranty Fund sent Dr. Zhang a letter requesting health insurance claim forms and "an invoice indicating payments are due in this matter." The letter further informed Dr. Zhang that "all bills . . . will be reviewed to determine that the procedures are both reasonable and necessary . . . and that the charges are of the usual, customary and reasonable fees specific to [Dr. Zhang's] geographic area." The Guaranty Fund promised payment "upon receipt of this information." The Guaranty Fund did not send a copy of this letter to claimant.

On August 14, 2006, claimant requested the commission to issue a show cause against the Guaranty Fund for failing to attempt to pay Dr. Zhang in compliance with the June 27, 2006 opinion. Claimant also requested that the commission assess against the Guaranty Fund her attorney's fees and costs in her attempts to enforce the order. The commission sent a letter August 22, 2006, giving the Guaranty Fund seven days to respond before the commission ruled on the show cause request.

The Guaranty Fund responded, stating that it had not received a reply from Dr. Zhang to their July 20, 2006 letter. After the delay in waiting for a response, the Guaranty Fund used the

---

[3] The deputy commissioner's opinion also ordered the Guaranty Fund to pay claimant for various out-of-pocket medical expenses. However, these payments are not before us on appeal.

–3–

health care insurance forms claimant had submitted at the May 11, 2006 hearing, and had

submitted these forms within their office for "bill review" on a "rush" status. The Guaranty

Fund also suggested that part of the delay was attributable to the departure of the initial adjuster

from the Guaranty Fund's employment. The Guaranty Fund maintained the position that they

were entitled to audit Dr. Zhang's bills to ensure that they were consistent with the prevailing

local rate for similar treatment.

On September 13, 2006, the deputy commissioner ruled that the Guaranty Fund's

explanation was not "adequate to justify failure to comply with [the June 27, 2006] Opinion."

Specifically, the deputy commissioner did not believe that the opinion allowed the Guaranty

Fund to conduct any "medical audit for usual, customary and reasonable treatment" before

paying Dr. Zhang's bills. The deputy commissioner ordered the Guaranty Fund, pursuant to

Code § 65.2-713,[4] to "pay sanctions to claimant's counsel for his repeated attempts to have the

[Guaranty] Fund abide by the Opinion."

---

[4] Code § 65.2-713 provides, in relevant part:

> A. If the Commission or any court before whom any proceedings
> are brought or defended by the employer or insurer under this title
> shall determine that such proceedings have been brought,
> prosecuted, or defended without reasonable grounds, it may assess
> against the employer or insurer who has so brought, prosecuted, or
> defended them the whole cost of the proceedings, including a
> reasonable attorney's fee, to be fixed by the Commission.

> B. Where the Commission finds that an employer or insurer has
> delayed payment without reasonable grounds, it may assess against
> the employer or insurer the whole cost of the proceedings,
> including a reasonable attorney's fee to be fixed by the
> Commission. In such a case where an attorney's fee is awarded
> against the employer or insurer, the Commission shall calculate
> and add to any award made to the claimant interest at the judgment
> rate, as set forth in § 6.1-330.54, on the benefits accrued from the
> date the Commission determined the award should have been paid
> through the date of the award.

–4–

The Guaranty Fund requested review of the deputy commissioner's opinion by the full commission. Before the full commission reviewed the case, the Guaranty Fund paid Dr. Zhang $71,725.85, and stated in a letter to Dr. Zhang that "no further payments are due."

The commission issued its review opinion on February 28, 2007, affirming in part, reversing in part, and vacating the assessment of penalties against the Guaranty Fund. As to the assessment of penalties, the commission held:

> However, the Commission may not assess a penalty against the [Guaranty] Fund. The Commission has previously ruled that attorney fees cannot be assessed against the Guaranty Fund and we find no reasons to distinguish precedence. In Quinn v. Flowers Transport, Inc., VWC File No. 197-02-82 (September 17, 2002), the Commission, referring to the Guaranty Fund, stated: "No penalty can be assessed against the Fund." Also, in Price v. Johnston Memorial Hospital, VWC File No. 207-09-52 (January 4, 2005), the Commission noted that the Guaranty Fund was a creature of statute to pay claims of insolvent insurers, analogized it to the Uninsured Employer's Fund, and determined that penalties pursuant to Code [§] 65.2-713 could not be assessed against the Guaranty Fund.

The commission further found that the Guaranty Fund had "waived their right to review and reduce Dr. Zhang's medical bills in accordance with Code § 65.2-605 by failing to raise such defense to the amount [at the May 2006 hearing] and by failing to appeal the Deputy Commissioner's specific findings in his June 2006 Opinion."[5] However, the commission determined that, in ordering the Guaranty Fund to pay Dr. Zhang, the deputy commissioner had "exceeded his statutory jurisdiction." The commission ruled

> [t]hat part of the June Opinion which exceeds the Commission's authority is unenforceable. Thus, we will utilize our equitable powers grounded in the doctrine of imposition to correct this mistake.
>
> It is clear that, if Dr. Zhang has not received payment for services rendered and addressed in the June Opinion, the employer

---

[5] The Guaranty Fund did not appeal this finding of the commission, so that issue is not before us on appeal.

-5-

is responsible for payment of such. However, if Dr. Zhang has already been paid, we do not have the authority to order a third party reimbursement and any payment to Dr. Zhang above the $95,030.00 would constitute an inappropriate double payment. We find that ordering double payment to the medical provider, in the expectation that the provider might accept the payment and make a refund to the third party, is no different than ordering a direct payment to the third party. The Commission does not have the authority to do indirectly what it cannot do directly and, in such circumstances, the parties are left to the appropriate civil remedies.

This appeal follows.

## ANALYSIS

This appeal does not present a case of conflicting evidence or a dispute concerning the commission's findings of fact. The issues before us are purely issues of law. On appeal, we are "not bound by the legal determinations made by the commission. 'We must inquire to determine if the correct legal conclusion has been reached.'" Cibula v. Allied Fibers & Plastics, 14 Va. App. 319, 324, 416 S.E.2d 708, 711 (1992) (quoting City of Norfolk v. Bennett, 205 Va. 877, 880, 140 S.E.2d 655, 657 (1965)), aff'd, 245 Va. 337, 428 S.E.2d 905 (1993).

### Jurisdiction to Order Payment

Claimant argues that the commission erred in "concluding it did not have jurisdiction to order the employer to pay medical expenses to the health care provider in a dispute between an employer, an employee, and a health care provider."[6]

The commission ruled that the deputy commissioner's order of payment to Dr. Zhang both "exceeded his statutory jurisdiction" and "exceeded the Commission's authority." It seems that the commission erroneously equated the legal concept of "jurisdiction" with "authority." Essentially, the commission ruled that it could entertain a collateral attack on the deputy

---

[6] Claimant also argues that the commission's decision was a "retroactive award" and "deprived claimant of a vested property interest." Because we rule in claimant's favor on the other issues before us, we need not reach these arguments on appeal.

-6-

commissioner's June 2006 opinion because the deputy commissioner had no jurisdiction to order payments to Dr. Zhang.

A review of our case law reveals that "jurisdiction" and "authority" are two very different concepts. In Nelson v. Warden, 262 Va. 276, 552 S.E.2d 73 (2001), the Supreme Court of Virginia outlined the "'necessary distinction to be drawn . . . between the power of a court to adjudicate a specified class of cases, commonly known as subject matter jurisdiction, and the authority of a court to exercise that power in a particular case.'" Nelson, 262 Va. at 281, 552 S.E.2d at 75 (quoting David Moore v. Commonwealth, 259 Va. 431, 437, 527 S.E.2d 406, 409 (2000)).

"'[S]ubject matter jurisdiction is granted by constitution or statute.'" Id. Subject matter jurisdiction allows the court or the commission to adjudicate the matter in controversy. Bd. of Supervisors v. Bd. of Zoning Appeals, 271 Va. 336, 347, 626 S.E.2d 374, 381 (2006). "'[I]t cannot be waived,'" and "'any judgment rendered without it is void *ab initio*.'" Nelson, 262 Va. at 281, 552 S.E.2d at 75 (quoting David Moore, 259 Va. at 437, 527 S.E.2d at 409). "'[L]ack of subject matter jurisdiction may be raised at any time, in any manner, before any court, or by the court itself.'" Id.

In contrast, "[a] court's authority to exercise its subject matter jurisdiction over a case may be restricted by a failure to comply with statutory requirements that are mandatory in nature and, thus, are prerequisite to a court's lawful exercise of that jurisdiction." Dennis Moore v. Commonwealth, 259 Va. 405, 409, 527 S.E.2d 415, 417 (2000). Failure to timely and properly object to a lack of authority waives any later challenge; any actions taken without authority are merely "*voidable* and not void." Nelson, 262 Va. at 284-85, 552 S.E.2d at 77. Voidable actions become void only upon subsequent direct review, after the appropriate objection has been raised by a party to the proceedings. Id. at 285, 552 S.E.2d at 78. "A voidable judgment is subject to

direct attack at any time before the judgment becomes final, but is not subject to collateral attack." Pope v. Commonwealth, 37 Va. App. 451, 456, 559 S.E.2d 388, 390 (2002).

Here, the deputy commissioner had before him a claim, filed by a claimant, against an employer and its insurer, for payment of medical treatment for injuries sustained as a result of a compensable work accident. That issue is directly within the subject matter jurisdiction of the commission. "All questions arising under [the Workers' Compensation Act] . . . shall be determined by the Commission . . . ." Code § 65.2-700. "This grant of subject matter jurisdiction includes the authority of the Commission to enforce its orders and to resolve coverage and payment disputes." Bogle Development Co. v. Buie, 250 Va. 431, 434, 463 S.E.2d 467, 468 (1995). Code § 65.2-714(A) provides the commission exclusive jurisdiction over all disputes concerning payment of the fees or charges of physicians and hospitals. Moreover, an employer has a statutory duty to provide an employee with free medical care related to a compensable injury. Code § 65.2-603(A).

"[T]he commission had before it a dispute among a medical care provider, an employee, and an employer concerning whether the employer was responsible for payment of [claimant's] medical expenses. Such a dispute falls squarely within the commission's sole jurisdiction provided for under the Act." Combustion Eng'g v. Lafon, 22 Va. App. 235, 238-39, 468 S.E.2d 698, 699 (1996). Thus, we find that the commission erred in finding that the deputy commissioner did not have the jurisdiction to order the Guaranty Fund to pay Dr. Zhang's bill for claimant's medical treatment.

Further, the commission's ruling that the deputy commissioner's order "exceeded the Commission's authority" was not an issue that the commission could consider in a collateral attack; this matter had to be raised on direct appeal from the deputy commissioner's June 2006 opinion. Epps v. Commonwealth, 47 Va. App. 687, 702, 626 S.E.2d 912, 919 (2006) (*en banc*)

("If the court lacks authority to exercise its subject matter jurisdiction, the order would be erroneous or voidable, not void, and appellant's remedy would be a direct appeal." (citation omitted)), aff'd, 273 Va. 410, 641 S.E.2d 77 (2007). Because the Guaranty Fund failed to appeal the decision of the deputy commissioner to the full commission within twenty days, that decision became final. This precludes the commission's consideration of whether the deputy commissioner acted beyond the scope of his authority in ordering the payment to Dr. Zhang.

Doctrine of Imposition

Claimant contends that the commission erred in using the doctrine of imposition to review a decision of the deputy commissioner that was not appealed by the Guaranty Fund.

In addition to ruling on the "jurisdiction" and "authority" of the deputy commissioner to order the payment to Dr. Zhang, the commission also invoked the doctrine of imposition to "correct this mistake." We must consider whether the commission can use the doctrine of imposition to reach the merits of an unappealed opinion of the deputy commissioner.

"Application for full commission review of an award must be made within twenty days of its entry. Absent clear and convincing evidence of fraud, misrepresentation, mutual mistake, or imposition the commission has no authority to vacate an award from which no party sought timely review." Butler v. City of Va. Beach, 22 Va. App. 601, 604, 471 S.E.2d 830, 832 (1996) (citation omitted). Here, there are no allegations of fraud, misrepresentation or mutual mistake. The commission considered only the doctrine of imposition.

> "Within the principles established by statutes and the decisions construing them, the commission has 'jurisdiction to do full and complete justice in each case.' From that principle has developed the concept known as 'imposition,' which empowers the commission in appropriate cases to render decisions based on justice shown by the total circumstances even though no fraud, mistake or concealment has been shown."

–9–

Odom v. Red Lobster # 235, 20 Va. App. 228, 234, 456 S.E.2d 140, 143 (1995) (quoting Avon Products, Inc. v. Ross, 14 Va. App. 1, 7, 415 S.E.2d 225, 228 (1992)). "The application of the doctrine, however, requires a threshold showing of unfairness." Tuck v. Goodyear Tire & Rubber Co., 47 Va. App. 276, 285, 623 S.E.2d 433, 437 (2005). "[T]he doctrine of imposition focuses on a party's or the commission's 'use of superior knowledge [of, or] experience with[,] the . . . Act or use of economic leverage, which results in an unjust deprivation' of benefits under the Act or an unjust application of the Act's provisions." Overhead Door Co. v. Lewis, 29 Va. App. 52, 60, 509 S.E.2d 535, 538-39 (1999) (quoting Butler, 22 Va. App. at 605, 471 S.E.2d at 832).

The key to meeting this threshold showing of unfairness is for the party arguing in favor of using the doctrine of imposition to show "a series of acts" by the opposing party or the commission upon which the party "naturally and reasonably relies to his or her detriment." Butler, 22 Va. App. at 605, 471 S.E.2d at 832. Thus, "the issue is whether under the totality of the circumstances shown, the actions of [one party] created an imposition on the commission and the [other party] which empowered the commission 'do full and complete justice.'" Ross, 14 Va. App. at 8, 415 S.E.2d at 229.

"[T]he doctrine of imposition does not apply where a [party's] acts are consistent with an endeavor to comply with the [Workers' Compensation] Act." Odom, 20 Va. App. at 234, 456 S.E.2d at 143.

> Imposition cannot be invoked to reward a party who blatantly contravenes the Act's requirements . . . . The commission's "adoption of . . . rules [for carrying out the provisions of the Act] is a legislative act, and the enactment is binding in law upon the parties and the Commission as well." [Sargent Electric Co. v.] Woodall, 228 Va. [419,] 424, 323 S.E.2d [102,] 105 [(1984)]. Thus, the commission's authority to do full and complete justice must be exercised "within the principles established by statutes and rules construing them." [] Ross, 14 Va. App. [at] 7, 415 S.E.2d [at] 228 [].

–10–

Uninsured Employer's Fund v. Peters, 43 Va. App. 731, 741, 601 S.E.2d 687, 692 (2004) (first alteration in original).

In Lewis, 29 Va. App. 52, 509 S.E.2d 535, we refused to apply the doctrine of imposition to allow an employer to terminate an award of benefits where the claimant had negotiated and received a settlement for a third-party claim relating to his injury without first consulting with employer. Lewis, 29 Va. App. at 60-61, 509 S.E.2d at 539. We held that the doctrine was "inapplicable because the benefit accruing to the claimant in this case did not result from his use of superior knowledge or experience with the Act or economic leverage." Id. at 61, 509 S.E.2d at 539.

Similarly, here, any injustice or unfairness that arises from the possibility of a "double payment" does not result from claimant's "use of superior knowledge or experience with the Act" or any "economic leverage." Instead, the injustice, if any, arose from the Guaranty Fund's own act: the failure to timely appeal the June 2006 opinion of the deputy commissioner. We will not allow the commission to use the doctrine of imposition in favor of a party who has created the very injustice the doctrine seeks to remedy. See Butler, 22 Va. App. at 605, 471 S.E.2d at 832 (refusing to apply the doctrine of imposition where the claimant failed to seek timely review of an award and the error the claimant complained of resulted from an agreement drafted and signed by the claimant). Therefore, we find that the commission erred in using the doctrine of imposition to consider the merits of the deputy commissioner's June 2006 opinion. We reverse the commission's decision to vacate the deputy commissioner's order as to medical payments.[7]

---

[7] Because the Guaranty Fund did not seek direct review of the deputy commissioner's June 2006 opinion, the merits of that decision, namely whether the commission has the authority to order the Guaranty Fund to pay a health care provider a sum that has already been paid by a third-party insurer, are not before us on appeal.

Penalties Against the Guaranty Fund

Claimant maintains that the commission erred in determining "that attorney's fees for unreasonable defense could not be assessed against" the Guaranty Fund.  We agree.

The commission determined that it "may not assess a penalty against the [Guaranty] Fund."  For this proposition, the commission relies on two unpublished opinions of the commission, Quinn v. Flowers Transport, Inc., VWC File No. 197-02-82 (September 17, 2002), and Price v. Johnston Memorial Hospital, VWC File No. 207-09-52 (January 4, 2005).  Both of those opinions point to other unpublished opinions of the commission, some dealing with the Uninsured Employer's Fund.  None of these opinions cite to a statute, an opinion of the Court of Appeals, or an opinion of the Supreme Court in support of the rationale that the commission cannot assess fees against either the Guaranty Fund or the Uninsured Employer's Fund; indeed, we cannot find support for this proposition in our case law or in any of the governing statutes.

We are not bound by the commission's legal analysis in this or prior cases.  B.P. Solar & Ace Am. Ins. Co. v. Jones, 49 Va. App. 322, 327 n.3, 641 S.E.2d 124, 126 n.3 (2007) (holding that we are not bound to consider prior decisions of the commission).

The legislature created the Guaranty Fund

> to provide for payments of "financial loss to claimants or policyholders resulting from the insolvency of an insurer."  The fund is not a financial obligation of the Commonwealth, but rather is financed through the rates and premiums charged for insurance policies in this Commonwealth.  Code § 38.2-1606 provides that the Guaranty Fund "shall pay the full amount of any covered claim arising out of a worker's compensation policy."

Franklin Mortg. Corp. v. Walker, 6 Va. App. 108, 115, 367 S.E.2d 191, 195 (1988) (*en banc*).

"Establishment of the [Guaranty Fund] affords a mechanism for the timely payment of appropriate claims to avoid financial loss to certain classes of people."  Virginia Property &

Casualty Ins. Guaranty Assoc. v. International Ins. Co., 238 Va. 702, 705, 385 S.E.2d 614, 616 (1989).

Code § 38.2-1606(A)(2) provides that the Guaranty Fund shall "[b]e deemed the insurer to the extent of the insolvent insurer's obligation on the covered claims and to that extent *shall have all the rights, duties, and obligations of the insolvent insurer* as if the insurer had not become insolvent." (Emphasis added). In cases involving workers' compensation claims, the Guaranty Fund has the same duty to abide by the rules and procedures set forth in the Act as would the insolvent insurer. When the Guaranty Fund acts in contravention to these rules and procedures, we see no principled reason, nor can we conceive of any public policy, why the Guaranty Fund should not be subject to the same penalties and consequences as would the insolvent insurer.[8] Thus, we find that the commission erred in ruling that penalties can never be assessed against the Guaranty Fund.

Because the commission did not consider whether the penalty assessed against the Guaranty Fund in this particular case was proper, we remand that issue to the commission to determine whether, given the circumstances, the deputy commissioner erred in ordering the Guaranty Fund to pay attorney's fees to claimant under Code § 65.2-713. See Va. Polytechnic Inst. v. Posada, 47 Va. App. 150, 160-61, 622 S.E.2d 762, 768 (2005) (awarding attorney's fees to claimant where employer unreasonably defended its failure to pay claimant's medical expenses).

## CONCLUSION

We find that the commission erred in ruling that the deputy commissioner lacked the jurisdiction to order the Guaranty Fund to attempt to pay Dr. Zhang. We hold that, because the

---

[8] Code § 65.2-524 suggests that even the Commonwealth is subject to penalties for not complying with the Act, except in very limited circumstances.

Guaranty Fund did not seek direct review of the deputy commissioner's June 2006 opinion, the commission could not reach the merits of that decision under the doctrine of imposition. Finally, we determine that the Guaranty Fund, like any other insurer, is subject to the penalty provisions set forth in the Act and we find that the commission erred in ruling that a penalty could never be assessed against the Guaranty Fund. We reverse the decision of the commission, and remand the case for a determination of whether the deputy commissioner properly assessed attorney's fees and costs against the Guaranty Fund under Code § 65.2-713.

<u>Reversed and remanded.</u>