## Richmond

JOHN DRIGGS COMPANY, INC., ET AL.

V.

THOMAS A. SOMERS

Record No. 831370.

January 18, 1985.

Present: All the Justices.

*William L. Carey (Benjamin J. Trichilo; Lewis & Trichilo*, on brief), for appellants.

*Michael W. Heaviside (Ashcraft & Gerel*, on brief) for appellee.

THOMAS, J., delivered the opinion of the Court.

In this workers' compensation case, the Court is called upon to decide whether the Industrial Commission had authority, under the circumstances herein pertaining, to amend an average weekly wage figure contained in an agreement reached between the claimant and his employer's carrier. A deputy commissioner ruled that the amendment sought by the claimant was authorized by statute and modified the agreement to increase the claimant's compensation. The full Commission affirmed the deputy commissioner's award.

The employer and its carrier appeal, contending in essence that since the claimant made no showing of fraud or of mutual mistake of fact, there exists no basis upon which to modify the compensation agreement. Therefore, according to the employer, the agreement between its carrier and its employee must be left intact. We disagree.

The claimant, Thomas A. Somers, injured his back on March 26, 1982, while working as a carpenter for John Driggs Company, Inc. At the time he was injured, Somers had worked for Driggs for only four weeks.

Driggs' carrier accepted Somers' claim as compensable. The carrier requested that Somers submit a copy of his 1981 W-2 Wage and Tax Statement. Somers complied with this request even

though his 1981 W-2 form did not relate to work done for Driggs. In 1981, Somers had been employed by G & C Construction Corporation as a carpenter and pile driver. He worked approximately ten months for that company and earned $15,982.95.

The carrier used the 1981 W-2 form to calculate Somers' average weekly wage while working for Driggs. The carrier determined that Somers' average weekly wage for the purpose of compensation for the 1982 injury was $307.36. The carrier arrived at this amount by dividing Somers' 1981 wages by fifty-two. The carrier prepared a Memorandum of Agreement containing the $307.36 wage figure and presented the agreement to Somers for his signature.

Somers had nothing whatever to do with the calculation of the wage figure. Somers, who was incapacitated at the time and who was not receiving compensation, signed the agreement. Eight months after signing the agreement he sought a hearing with the Commission to have the average weekly wage figure modified.

The heart of the employer's argument is that agreements between claimants and employers are to be encouraged; that such agreements further the purposes of the Workers' Compensation Act to provide compensation to injured employees in as expeditious a manner as possible; and that once an agreement has been made, it should not be lightly set aside. We agree with all these points but they do not answer the central problem posed by this appeal: whether the average weekly wage figure set forth in the agreement was miscalculated and whether the Commission was empowered to correct any such miscalculation.

Somers contends, and the Commission agreed, that the method of calculation used by the carrier violated Code § 65.1-6. That code section reads in pertinent part as follows:

Unless the context otherwise requires, "average weekly wages" means the earnings of the injured employee in the employment in which he was working at the time of the injury during the period of fifty-two weeks immediately preceding the date of the injury, divided by fifty-two; but if the injured employee lost more than seven consecutive calendar days during such period, although not in the same week, then the earnings for the remainder of the fifty-two weeks shall be divided by the number of weeks remaining after the time so lost has been deducted. When the employment prior to the

injury extended over a period of less than fifty-two weeks, the method of dividing the earnings during that period by the number of weeks and parts thereof during which the employee earned wages shall be followed, provided results fair and just to both parties will be thereby obtained. When by reason of a shortness of time during which the employee has been in the employment of his employer or the casual nature or terms of his employment it is impractical to compute the average weekly wages as above defined, regard shall be had to the average weekly amount which during the fifty-two weeks previous to the injury was being earned by a person of the same grade and character employed in the same class of employment in the same locality or community.

But when for exceptional reasons the foregoing would be unfair either to the employer or employee, such other method of computing average weekly wages may be resorted to as will most nearly approximate the amount which the injured employee would be earning were it not for the injury.

In our opinion, the carrier did not adhere to the requirements of this code section. First, this section nowhere explicitly permits the carrier to use wage figures from a previous year and a different employer to make the average weekly wage calculation. It permits the use of the wages in the fifty-two weeks prior to the injury only where "the injured employee [was] in the employment in which he was working at the time of the injury during the period of fifty-two weeks immediately preceding the date of the injury."

■ Second, even if the preceding fifty-two week period were used, if more than "seven consecutive calendar days" were lost from work during that fifty-two week period, the lost time would have to be deducted from the fifty-two week period. Thus, in the instant appeal, even if the 1981 wage information could have been used, it should not have been divided by fifty-two weeks since Somers worked only ten months that year.

■ Third, where the claimant has worked for a very short time, as was the case with Somers, the preferred method of calculation is to base the average weekly wage upon "the average weekly amount which during the fifty-two weeks previous to the injury was being earned by a person of the same grade and character employed in the same class of employment in the same locality or community." This was not done by the carrier. Moreover, the car-

rier did not contend that this calculation could not be made. Indeed, this was the method actually used by the Commission in modifying Somers' average weekly wage figure.

■ Finally, Code § 65.1-6 provides that in "exceptional" circumstances that would render unfair the method of calculations preferred by statute, such other methods of calculation "may be resorted to as will most nearly approximate the amount which the injured employee would be earning were it not for the injury." In our view, the carrier cannot rely on this language in support of its calculation because there was no showing of exceptional circumstances that would render unfair the methods of calculation contained in the statute. Further, the method of calculation used by the carrier worked to the claimant's disadvantage because it resulted in a smaller average weekly wage figure than would have resulted had the statutory methods been used. The Commission correctly concluded that the carrier's calculation was contrary to the statute and therefore erroneous.

■ The carrier submits that even if the calculation is wrong it cannot now be changed because the error was not the result of fraud or of mutual mistake of fact. The carrier makes this argument even though, in its brief, it concedes that in *Harris* v. *Diamond Const. Co.*, 184 Va. 711, 36 S.E.2d 573 (1946), we held that the Commission could set aside an award or agreement upon evidence of fraud, mistake, *or imposition.* Thus, in this appeal, even if there existed neither fraud nor mistake, if there was an imposition, the Commission was empowered to modify the agreement. The carrier says very little about imposition. It merely argues that there was no proof of an imposition. We think otherwise.

■ Heretofore, we have said very little about the meaning of the word "imposition" as a basis for setting aside or amending an award or agreement. Nevertheless, in *Harris* we acknowledged the existence of this concept. In considering the meaning of "imposition," we must do so against the backdrop of *Harris*, where the term was used, and where we also stated that the Act grants the Commission "jurisdiction to do full and complete justice in each case." 184 Va. at 720, 36 S.E.2d at 577.

■ In our view, the carrier's deviation from the requirements of Code § 65.1-6 worked an imposition upon Somers. The carrier, which works frequently with claims under the Act, undoubtedly had knowledge of the Act superior to that possessed by Somers. At the time the agreement was handed to him, Somers was in-

jured, out of work, and receiving no compensation. The agreement presented him with an apparently simple means of getting a flow of money at a time he needed it. The carrier had the upper hand. It had superior knowledge, and it had the power either to turn over money immediately to an injured man or to "fight" with him about the proper amount and thereby delay the first compensation check. The carrier did not tell Somers how the average weekly wage figure was to be computed nor did it consult with him about the possible methods of calculation. Finally, of the several possible methods of calculation, the carrier settled upon one which resulted in a lower compensation award to Somers than he would have received had other methods been used. Under these facts, we conclude that the carrier's conduct constituted an imposition upon the claimant.

Moreover, we also conclude that the carrier's failure to abide by Code § 65.1-6 constituted an imposition upon the Commission. The Workers' Compensation Act is in the nature of a compromise between employers and employees; each surrenders certain rights to gain certain rights. *See Fauver* v. *Bell*, 192 Va. 518, 521-22, 65 S.E.2d 575, 577 (1951); *Humphrees* v. *Boxley Bros. Co.*, 146 Va. 91, 95-96, 135 S.E. 890, 891 (1926). An essential element of this compromise is the employer's obligation to pay for compensable injuries at a rate contemplated by the Act. When the average weekly wage embodied in a memorandum of agreement substantially deviates from the statutory guidelines, the balance struck by the Act's compromises is disrupted. The Commission has the power and authority to right this imbalance and thereby protect itself and its award from such imposition.

In light of the foregoing, we hold that the carrier's calculation of the claimant's average weekly wage was legally incorrect, that the average weekly wage arrived at by the Commission was in accord with Code § 65.1-6, and that the Commission did not err in modifying the agreement between the claimant and his employer's carrier relating to the claimant's average weekly wage. Therefore, the award appealed from will be

*Affirmed.*