COURT OF APPEALS OF VIRGINIA


Present:   Judges Humphreys, McClanahan and Beales
Argued at Lexington, Virginia


HAMPTON INN AND SELECTIVE INSURANCE
  COMPANY OF AMERICA
                                                                OPINION BY
v.        Record No. 2186-10-3              JUDGE ROBERT J. HUMPHREYS
                                                                MAY 17, 2011
JESSICA MARIE SISK KING


FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

Lisa Reed Petersen (Robert Harrington & Associates, on brief), for
appellants.

(Timothy S. Peck, Geovanni Munoz; The Chandler Law Group, on
brief), for appellee.  Appellee submitting on brief.


Hampton Inn and Selective Insurance Company of America ("employer") appeal the

opinion of the Virginia Workers' Compensation Commission ("commission") extending the

expiration date set forth in the terms of the compromise settlement agreement for payment of

Jessica Marie Sisk King's ("King") medical benefits five months from the date of its opinion.

Employer contends that the commission erred as a matter of law in concluding that the expiration

date should be extended beyond the terms set forth in the petition for approval of the

compromise settlement and the order approving the compromise settlement.  For the following

reasons, we agree and reverse.

I.  BACKGROUND

"On appeal, we view the evidence in the light most favorable to the prevailing party

before the commission."  Cent. Va. Obstetrics & Gynecology Assocs., P.C. v. Whitfield, 42

Va. App. 264, 269, 590 S.E.2d 631, 634 (2004) (citing Clinchfield Coal Co. v. Reed, 40

Va. App. 69, 72, 577 S.E.2d 538, 539 (2003)). So viewed, the evidence is as follows.

On November 5, 2007, King suffered an injury to her low back when she slipped on a

wet floor while working for the employer. On March 12, 2009, the commission entered an order

approving the compromise settlement agreement entered into by the parties.[1] The order

incorporated the compromise settlement agreement, and specifically recited that the agreement

provided the following settlement of the claims:

> The [employer] agree[s] to pay to [King] and [King] agrees to
> accept as complete payment of all claims which [s]he might have
> against the [employer] arising under the Workers' Compensation
> Laws of the Commonwealth of Virginia, as a result of the injuries
> sustained on November 5, 2007, by [King], the sum of THIRTY
> THOUSAND DOLLARS AND NO CENTS ($30,000.00). *Six
> months of any and all causally related medical expenses will also
> be paid.* Thereafter, medical expenses shall be the sole and
> exclusive responsibility of the claimant.

 (Emphasis added).

King then filed a claim with the commission on April 27, 2009, "for a weight loss

program to be provided by The Duke Diet and Fitness Center," ("Duke program"), with

Dr. Murray E. Joiner, Jr.'s, her treating physician, endorsement and a description of the program

attached. The commission sent an order to the employer on April 30, 2009, noting King's claim

and that the employer had twenty days within which to advise whether it was accepting the

claim. On May 5, 2009, the carrier responded that "[t]he claim is accepted as compensable but

the following issues are unresolved: payment of certain medical expenses[, and] other[:] [d]ue to

the fact that IW [presumably "injured worker" although not clarified in the record] had

---

[1] On March 5, 2009, King signed an affidavit providing that she understood she waived certain rights by settling the case. One provision specifically provided *"That I understand that this settlement forever closes my case, including any and all compensation or medical benefits except those specifically listed in the settlement."* (Emphasis in original).

gastric bypass surgery and did not lose – we will agree to her joining weight watchers – attached are location[s] – there are over 100-."

After receiving the employer's response, the commission sent a notice of an on-the-record hearing to the parties on May 11, 2009; and on May 14, 2009, the commission ordered an evidentiary hearing on the matter pursuant to the employer's request. The evidentiary hearing was held on October 20, 2009.

At the hearing, King testified that she had been overweight and had gastric bypass surgery in October 2006 before the accident at work. She stated that she had weighed 350 pounds before the surgery and that she weighed 201 pounds after the surgery, which weight she maintained for a year. However, she gained 71 pounds after her accident because she was not able to exercise or continue the activity that she had previously done, and she was also put on steroids. Specifically, she testified that she was not able to work out at the YMCA because of the restrictions on bending and stretching, and she was not able to continue her walking activities as much. King also testified that Dr. Joiner and Dr. Bruce M. Stelmack, the employer's independent medical examiner, recommended weight loss to help her back and to see if she needed back surgery. She further testified that she did not know that the employer had offered any type of weight loss program during the six months after the settlement.

On cross-examination, King testified that she had weight problems her whole life and that she also had problems with her knees. In addition, she stated that she had attempted the home-based Weight Watchers program between the ages of seventeen and twenty-one, and did not have much success. King testified that she had a support group after her gastric bypass surgery and she attended a few meetings, but she subsequently stopped going when she realized she had a support group at home consisting of her husband, parents, and in-laws. They helped her by walking with her nightly, and eating healthier foods. In addition, her husband worked out

- 3 -

with her at the YMCA. King also admitted on cross-examination that she had taken some medication prior to her work accident that had side effects of weight gain.

King further testified on cross-examination that Dr. Stelmack recommended a weight loss program, but she could not recall if he recommended that it be a local program. She did recall telling Dr. Stelmack that she had a hard time traveling and that she would like to do pool therapy if there was one available locally. She also recalled that on March 11, 2009, Dr. Joiner recommended that she see her primary care physician to see if there were any other medical conditions that were causing her weight gain, and she subsequently went to the Rockbridge free clinic. King also testified that during her April 8, 2009 visit with Dr. Joiner, she inquired if he had received any information or knew anything regarding the Duke program, which was approximately four hours from her home. She admitted that she knew the Duke program was a four-week program that would require her to stay there during the program and that housing was not provided. King also admitted that she had not applied to the Duke program but she was also interested in a local weight loss program.

The relevant medical records before the commission provide that on April 14, 2008, Lisa M. Rapasky, Dr. Joiner's physician's assistant, evaluated King with Dr. Joiner's knowledge, and indicated that King had gained fifteen pounds since November. King was concerned at that time because she was post gastric bypass surgery, and "doesn't want to gain the weight back." On September 3, 2008, Ms. Rapasky evaluated King again, and recommended, pursuant to Dr. Joiner's specific recommendations, a "[w]eight loss program including supplements/meals with goal weight of 195." Dr. Joiner's September 8, 2008 progress notes indicate that King was given restrictions, and was to begin a weight loss program and pool therapy.

On January 15, 2009, Dr. Stelmack performed an independent medical examination of King, and confirmed that a weight loss program was needed. King informed Dr. Stelmack that

- 4 -

"she very much would like to stay in a weight loss program, but does not want to go to pool therapy because there is no therapy local to her home and therefore driving would exacerbate her pain." Dr. Stelmack noted that since the accident, King's weight had increased from 201 pounds to 272 pounds, and diagnosed her with chronic morbid obesity that had "worsened in the last year related to relative immobility." Dr. Stelmack gave the following relevant recommendations:

> 1. I agree with a weight loss program structured and local to her residence; however, I do not believe pool therapy is appropriate in view of the need to travel and her relatively excellent mobility and weight bearing status. She could participate in a strengthening exercise program to build muscles and burn calories without pool therapy as she clearly has excellent balance and mobility despite her complaints of chronic pain.

> 2. Surgical evaluation by a certified spine surgeon is appropriate to consider fusion and/or other interventions of her painful herniated disk as well as facet syndrome, which appears to be her primary complaint (pain upon extension) also demonstrated by physical therapy evaluation at Blue Ridge Physical Therapy on 2/26/08. I believe it is unlikely a spine surgeon would be willing to operate on her until she looses [sic] approximately 100 pounds, at which time her condition could be re-evaluated. I, therefore, do not feel she is at maximum medical improvement until she has participated in a weight loss program for at least three to six months and strengthening exercise program with combined efforts of diet and exercise as well as counseling in that regard.

In his January 26, 2009 clarification to his January 25, 2009 addendum to the independent medical examination, Dr. Stelmack specifically noted that he did not believe he could give a projection of King's "functional limits if and when [she] reaches MMI (Maximal Medical Improvement)" until an "improvement is demonstrated and weight loss has occurred."

On March 4, 2009, King's former attorney wrote Dr. Joiner requesting input on a weight loss program, and included information on the Duke program. He specifically asked, "[i]f you believe this program is appropriate, I ask that you please write a referral. If you do not believe this program is appropriate, please refer her to one which you find suitable."

Ms. Repasky evaluated King on March 11, 2009, and King informed Ms. Repasky that she never received authorization for an independent exercise program. King also informed Ms. Repasky that she had gained fifty pounds since starting Lyrica, but she did not want to stop taking it because it was effective. Ms. Repasky advised King to see her primary medical doctor "to rule out [the] remote possibility of a medical condition causing [the] weight gain (nonwork-related)."

During her April 8, 2009 evaluation by Ms. Repasky, King asked if they had received the information regarding the Duke program. The notes show that there was no record indicating that they had received anything regarding the matter. On April 17, 2009, King's former counsel sent a second letter to Dr. Joiner regarding a weight loss program, and requesting input. Dr. Joiner replied on April 19, 2009, by writing the following on a copy of the April 17, 2009 letter: "The Duke [p]rogram is excellent, and I recommend it for her work related weight loss."

Prior to the deputy commissioner rendering an opinion after the October 20, 2009 hearing, the parties reached an agreement on October 28, 2009, regarding a weight loss program, but were not able to reach an agreement regarding King's request for an additional six months of medical benefits. The parties stipulated that the employer agreed to pay King "a lump sum of $2,805.60 for her to enroll in the weight loss program at The Center for Bariatric Medicine in Roanoke, VA."

On October 29, 2009, the deputy commissioner held that the provision for medical benefits "for any surgical consultation or treatment as recommended by Dr. Joiner following the weight loss program" was extended for five months from the date of the opinion. The employer sought review by the commission.

On August 26, 2010, the commission affirmed the deputy commissioner's decision, and held that the provision for medical benefits should be vacated and extended five months pursuant

to the doctrine of imposition.[2] The commission noted that it will change the terms of a settlement "where the evidence clearly and convincingly shows actions by the employer delayed treatment until after the expiration date provided in the settlement agreement," specifically found the employer's delayed authorization of the recommended weight loss program necessitated a change in the terms of the agreement, and agreed with the deputy commissioner that the denial of the necessary treatment required that the period for provision of medical treatment should be extended.

This appeal followed.

## II. ANALYSIS

### A. Standard of Review

"Factual findings of the commission will not be disturbed on appeal unless plainly wrong or without credible evidence to support them." Ga. Pac. Corp. v. Dancy, 17 Va. App. 128, 135, 435 S.E.2d 898, 902 (1993) (citing Armstrong Furniture v. Elder, 4 Va. App. 238, 247, 356 S.E.2d 614, 619 (1987)). "'If there is evidence, or reasonable inferences can be drawn from the evidence, to support the commission's findings, they will not be disturbed on review, even though there is evidence in the record to support a contrary finding.'" Amelia Sand Co. v. Ellyson, 43 Va. App. 406, 408, 598 S.E.2d 750, 751 (2004). "As a result, 'we do not judge the credibility of witnesses or weigh the evidence on appeal.'" Hoffman v. Carter, 50 Va. App. 199, 209, 648 S.E.2d 318, 323 (2007) (quoting Perry v. Delisle, 46 Va. App. 57, 64, 615 S.E.2d 494, 495 (2005) (en banc) (internal quotation marks omitted)).

"However, 'we review questions of law *de novo*.'" Montalbano v. Richmond Ford, LLC, 57 Va. App. 235, 244-45, 701 S.E.2d 72, 76 (2010) (quoting Rusty's Welding Serv., Inc. v. Gibson, 29 Va. App. 119, 127, 510 S.E.2d 255, 259 (1999)). "This Court is not bound by the

---

[2] Commissioners Diamond and Dudley were in the majority.

legal determinations made by the commission. 'We must inquire to determine if the correct legal conclusion has been reached.'" Atlas Plumbing & Mech., Inc. v. Lang, 38 Va. App. 509, 513, 566 S.E.2d 871, 873 (2002) (quoting Cibula v. Allied Fibers & Plastics, 14 Va. App. 319, 324, 416 S.E.2d 708, 711 (1992)).

## B. Summary Affirmance

King waived oral argument and asks this Court on brief to summarily affirm the commission's decision upon the basis that the appeal is without merit. Since this Court does not find that the appeal is without merit, we decline to dispose of this appeal summarily.

## C. Extension of Benefits

The employer argues that the commission erred as a matter of law in extending the expiration date for payment of King's medical treatment beyond the terms set forth in the petition for approval of compromise settlement and the order approving the compromise settlement. Specifically, employer contends that the commission erred in finding 1) "the employer's action in delaying the authorization of the recommended weight loss program in this case necessitates a change in the terms of the settlement" based on the doctrine of imposition because there is no evidence supporting the application of the doctrine of imposition; 2) Dr. Joiner was merely accommodating King's request for the Duke program; and 3) Dr. Joiner's referral was not a medical necessity.

Rule 7.1 of the Rules of the Virginia Workers' Compensation Commission addresses compromise settlement agreements, and requires that the agreement be submitted to the commission as a petition setting forth that the agreement is in the best interest of the employee. Code § 65.2-701(A) provides, in relevant part,

> If after injury or death, the employer and the injured employee . . . reach an agreement in regard to compensation or in compromise of a claim for compensation under this title, a memorandum of agreement in the form prescribed by the Commission shall be filed

with the Commission for approval. The agreement may be prepared by the employee, the employer or the compensation carrier. If approved, the agreement shall be binding, and an award of compensation entered upon such agreement shall be for all purposes enforceable as provided by § 65.2-710.[3] . . . Such agreement may be approved only when the Commission, or any member thereof, is clearly of the opinion that the best interests of the employee . . . will be served thereby.

The commission has the authority to "set aside an award or agreement upon evidence of fraud, mistake, or *imposition*." John Driggs Co., Inc. v. Somers, 228 Va. 729, 734, 324 S.E.2d 694, 697 (1985) (emphasis in original) (citing Harris v. Diamond Const. Co., 184 Va. 711, 36 S.E.2d 573 (1946)).[4] Imposition "'empowers the commission in appropriate cases to render decisions based on justice shown by the total circumstances even though no fraud, mistake or concealment has been shown.'" Odom v. Red Lobster # 235, 20 Va. App. 228, 234, 456 S.E.2d 140, 143 (1995) (quoting Avon Products, Inc. v. Ross, 14 Va. App. 1, 7, 415 S.E.2d 225, 228 (1992)). "The doctrine prevents an employer's use of its superior knowledge of, or experience with, the Workers' Compensation Act or its use of economic advantage to cause an unjust deprivation to the employee of benefits provided by the Act." Strong v. Old Dominion Power Co., 35 Va. App. 119, 126, 543 S.E.2d 598, 601 (2001).

"'The application of the doctrine, however, requires a threshold showing of unfairness.'" Miller v. Potomac Hosp. Found., 50 Va. App. 674, 687, 653 S.E.2d 592, 598 (2007) (quoting Tuck v. Goodyear Tire & Rubber Co., 47 Va. App. 276, 285, 623 S.E.2d 433, 437 (2005)).

The key to meeting this threshold showing of unfairness is for the party arguing in favor of using the doctrine of imposition to show

---

[3] Code § 65.2-710 addresses enforcement of orders and awards and states, "[o]rders or awards of the Commission may be recorded, enforced, and satisfied as orders or decrees of a circuit court upon certification of such order or award by the Commission. The Commission shall certify such order or award upon satisfactory evidence of noncompliance with the same."

[4] As the commission noted in its opinion, King signed an affidavit noting the rights that she surrendered with the compromise settlement agreement, and there is nothing in the record suggesting fraud, misrepresentation, or mutual mistake.

> "a series of acts" by the opposing party or the commission upon which the party "naturally and reasonably relies to his or her detriment." Thus, "the issue is whether under the totality of the circumstances shown, the actions of [one party] created an imposition on the commission and the [other party] which empowered the commission [to] 'do full and complete justice.'"

Id. at 687, 653 S.E.2d at 598 (citations omitted). However, "the doctrine of imposition does not apply where a carrier's or employer's acts are consistent with an endeavor to comply with the Act." Odom, 20 Va. App. at 234, 456 S.E.2d at 143 (citing Cheski v. Arlington County Public Schools, 16 Va. App. 936, 940, 434 S.E.2d 353, 356 (1993)).

In looking at the totality of the circumstances, the record contains no evidence to support the commission's application of the doctrine of imposition. In this case, the employer did not use "its superior knowledge of, or experience with, the Workers' Compensation Act," nor did it use its "economic advantage to cause an unjust deprivation to the employee of benefits provided by the Act." Strong, 35 Va. App. at 126, 543 S.E.2d at 601. Further, King did not naturally and reasonably rely upon a series of acts by the employer to her detriment.

In response to the commission's notification of the claim for payment of the Duke program, the employer responded that "[t]he claim is accepted as compensable but the following issues are unresolved: payment of certain medical expenses [and] other [d]ue to the fact that IW had gastric bypass surgery and did not lose – we will agree to her joining weight watchers – attached are location – there are over 100-." While the commission held that "a denial of necessary treatment requires that the period for provision of medical treatment be extended," the record clearly shows that the employer did not deny the claim. The response was not a blanket denial of the claim for a weight loss program, nor did the employer dispute the compensability of a weight loss program. Rather, the employer, in good faith, responded with what amounted to a "counteroffer" of the less expensive program of Weight Watchers, which in essence was a

rejection of the specific Duke program recommended by Dr. Joiner, but not a denial of treatment by alternative weight loss programs.

In addition, the employer's actions were consistent with an intent to comply with the Act and the compromise settlement agreement when it replied in good faith within the required time to the commission's letter that it found the claim compensable and that it was willing to pay for a weight loss program, albeit a less expensive one. See Odom, 20 Va. App. at 234, 456 S.E.2d at 143 ("[T]he doctrine of imposition does not apply where a carrier's or employer's acts are consistent with an endeavor to comply with the Act." (citing Cheski, 16 Va. App. at 940, 434 S.E.2d at 356)). Further, the employer's one act did not result in unfairness to King. See Tuck, 47 Va. App. at 286, 623 S.E.2d at 438 ("[I]n those cases, unlike in this case, each of the claimants made a threshold showing of unfairness. In Avon Prods., Inc., the employer incorrectly represented to the claimant that all documents necessary for entry of the award had been timely filed[.] 14 Va. App. at 7, 415 S.E.2d at 228. In John Driggs Co., the employer's calculation 'substantially deviated from the statutory guidelines[.]' 228 Va. at 735, 324 S.E.2d at 697. Similarly, in Odom, the employer and the commission had mistakenly led the claimant to believe that a timely claim had already been filed. 20 Va. App. 228, 456 S.E.2d 140.").

The employer agreed that the claim was compensable, but it in good faith contested payment of the Duke program in favor of a less expensive program. If anything, the delay should have resulted in payment of a weight loss program through the application of the doctrine of imposition, not a five-month extension of payment for all causally related medical benefits. See Dunrite Transmission v. Sheetz, 18 Va. App. 647, 446 S.E.2d 473 (1994) (holding the time period for payment of medical benefits was tolled upon the filing of an application for hearing on the payment of the medical treatment and that employer's delay in paying for the medically necessary treatment recommended resulted in payment of the specific treatment recommended).

However, the parties independently agreed – post-hearing but pre-deputy commissioner decision – to extend employer's responsibility for payment of a weight loss program through payment of The Center for Bariatric Medicine in Roanoke, Virginia, for $2,805.60. Thus, the single "counteroffer" of payment for a Weight Watchers program does not constitute evidence of a series of acts by the employer to which it is reasonable King relied upon to her detriment such that the agreement for payment of "any surgical consultation or treatment recommended by Dr. Joiner" should be extended five months. Therefore, we find no basis for the commission to employ the doctrine of imposition on the facts of this case, and hold that the commission erred in finding the doctrine of imposition applicable to these facts, and extending the payment of medical benefits five months.

Because we hold that the commission erred in applying the doctrine of imposition, we do not reach the merits of employer's contention that the commission erred in finding that Dr. Joiner's recommendation of the Duke program was not an accommodation. In addition, we do not address employer's contention that there is no credible evidence that Dr. Joiner's recommendation of the Duke program was due to a medical necessity because employer never raised this issue before the commission. Thus, Rule 5A:18 bars our consideration of that issue for the first time on appeal. See Rule 5A:18; Williams v. Gloucester Sheriff's Dep't, 266 Va. 409, 411, 587 S.E.2d 546, 548 (2003). Furthermore, employer does not argue that we should invoke the "good cause" or "ends of justice" exceptions to Rule 5A:18, and we decline to do so *sua sponte*. Edwards v. Commonwealth, 41 Va. App. 752, 761, 589 S.E.2d 444, 448 (2003) (en banc).

## III. CONCLUSION

For the above reasons, we hold that the commission improperly applied the doctrine of imposition to modify the agreement and extend the expiration date for payment of King's

medical benefits five months from the date of its opinion.  Therefore, the award appealed from is reversed, and the case is remanded for further proceedings consistent with this opinion.

<u>Reversed and remanded.</u>