COURT OF APPEALS OF VIRGINIA

Present:   Judges Elder, Beales and Senior Judge Willis
Argued at Salem, Virginia

UNPUBLISHED

THE DEALER'S LOT, INC. AND
  ERIE INSURANCE EXCHANGE

                                              MEMORANDUM OPINION[*] BY
v.      Record No. 2441-11-3                  JUDGE RANDOLPH A. BEALES
                                              NOVEMBER 20, 2012

LYDIA CAROL JENKINS


              FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

          J. David Griffin (Winchester Law Group, P.C., on brief), for
          appellants.

          Alaina M. Dartt (Ashcraft & Gerel, LLP, on brief), for appellee.


       The Dealer's Lot, Inc. and its workers' compensation insurance carrier, Erie Insurance

Exchange (collectively, employer),[1] appeal the commission's decision ordering it to pay for the

cost of a surgery that Lydia Jenkins (claimant) underwent on March 25, 2010 at the University of

Virginia Medical Center.  On appeal, employer argues that the commission erroneously held it

responsible for this surgery under the doctrine of imposition.  For the following reasons, we

affirm the commission's decision in this case.

_____

          [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

          [1] When appropriate, Erie Insurance Exchange will also be referred to as "employer's
insurance carrier" in this opinion.

I. BACKGROUND[2]

Claimant suffered a workplace injury to her right wrist on February 24, 2003. Employer did not dispute the compensability of this injury, and the commission entered an award for medical benefits entitling claimant to "payment of all reasonable and necessary medical treatment causally related to the Feb. 24, 2003 accident for as long as necessary."

The record on appeal also establishes that claimant was treated for the unrelated condition of rheumatoid arthritis in her right hand and fingers. This treatment dates back at least to May 2007, according to the record.[3]

On January 6, 2010, Dr. A. Bobby Chhabra of the University of Virginia Health System examined claimant. Dr. Chhabra's notes from that examination indicate that claimant's "rheumatoid nodules are really bothering her in her small and ring fingers and then the triggering of her index as well as the numerous nodules and tenosynovitis of her thumb." Dr. Chhabra noted that he and claimant "discussed treatment options" and agreed that it would be best if claimant underwent surgery to "remove her rheumatoid nodules from her ring, small finger, and thumb as well as do a tenosynovectomy of her index and thumb flexor tendons as these are painful."

---

[2] Under settled principles, the evidence is viewed in the light most favorable to claimant, who was the prevailing party in the commission. See, e.g., R.G. Moore Bldg. Corp. v. Mullins, 10 Va. App. 211, 212, 390 S.E.2d 788, 788 (1990). "On appeal, the Commission's findings of fact are conclusive and binding upon us if they are supported by credible evidence." Clinchfield Coal Co. v. Bowman, 229 Va. 249, 251, 329 S.E.2d 15, 16 (1985); see Code § 65.2-706(A).

[3] The record contains a May 16, 2007 assessment by Dr. Danny Perry indicating that claimant "is here about medication change and RA lab." Dr. Perry noted that claimant "is not feeling good" and "hurts everywhere, extremely." He noted that "the methotrexate is helping but lately her hands have become more painful." Dr. Perry assessed the problem as "RHEUMATOID ARTHRITIS as deteriorated" and, among other treatments, prescribed Prednisone. The record is silent who paid for this medical treatment.

It is undisputed that claimant discussed her upcoming surgery with Nasha Monroe, a workers' compensation specialist for employer's insurance carrier, during a February 16, 2010 telephone conversation. Monroe's claims management note from February 16, 2010, which is part of the commission record, states: "Clmt advised her wrist is a 'mess'. She advised it hurts. Her surgery is scheduled for 3-25-2010." The claims management note also indicates that Monroe said she would follow up with claimant "post surgery, but not before June."

The record is also undisputed that Monroe communicated with Dr. Chhabra's office about the doctor's treatment of the claimant. The commission record contains a document from Dr. Chhabra's billing office stating that claimant's treatment was covered under "INS PLAN CODE: W00 WORKERS COMP VA," while listing Monroe as the insurance plan contact. This document also contains the following notation: *"030510 APPROVED PER NASHA MONROE."* (Emphasis added).

On March 25, 2010, Dr. Chhabra performed the surgery that is the subject of this appeal. According to Dr. Chhabra's notes, "rheumatoid nodules and masses" were removed from claimant's right small finger, ring finger, middle finger, index finger, and thumb during this procedure.

After Dr. Chhabra performed the March 25, 2010 surgery on claimant, employer's insurance carrier inquired in an April 29, 2010 letter to Dr. Chhabra whether the March 25, 2010 surgery had been causally related to claimant's compensable fractured wrist from February 2003. Dr. Chhabra's undated handwritten response states, "No. Related to diagnosis of Rheumatoid Arthritis."

On May 24, 2010, claimant received an invoice from the University of Virginia Medical Center indicating that she owed $16,384 for the March 25, 2010 surgery. The invoice stated the total cost of the surgery, $17,932, had been billed to employer's insurance carrier, which was

listed as claimant's primary insurance (with no secondary insurance listed). According to the invoice, employer's insurance carrier had paid $1,548 of this total, leaving claimant responsible for the remainder of the total cost.

Claimant filed an application for a hearing in the commission on June 7, 2010, seeking payment from employer for the outstanding cost of the March 25, 2010 surgery. Claimant then amended her application less than two months later, when she received an additional invoice from the University of Virginia Health Services Foundation stating that she also owed $1,080 for the anesthesia from the March 25, 2010 surgery.[4]

The parties stipulated before the deputy commissioner that the reason for claimant's March 25, 2010 surgery was not causally related to claimant's compensable injury that occurred in February 2003. Due to this stipulation, claimant has conceded that employer would not ordinarily be required to cover the cost of the surgery under the provisions of Code § 65.2-603[5] or under the commission's medical benefits award to the claimant arising from the February 24, 2003 compensable injury. However, claimant argued in the commission that employer should still be responsible for the cost of the March 25, 2010 surgery under the equitable doctrine of imposition, which empowers the commission in appropriate cases to "'do full and complete justice' where the actions of an employer constitute an imposition on an employee." Cheski v. Arlington County Pub. Sch., 16 Va. App. 936, 940, 434 S.E.2d 353, 356 (1993) (quoting John Driggs Co. v. Somers, 228 Va. 729, 734, 324 S.E.2d 694, 697 (1985)). According to claimant,

---

[4] According to this second invoice, dated July 29, 2010, a payment in the amount of $1,000.68 had been made by the workers' compensation insurance carrier on May 10, 2010, but this payment was refunded back to the insurance carrier on June 30, 2010.

[5] Code § 65.2-603(A)(1) states, in pertinent part, "As long as necessary after an accident, the employer shall furnish or cause to be furnished, free of charge to the injured employee, . . . necessary medical attention." Under Code § 65.2-603(A)(1), the evidence must "support a finding of causal relation between" the workplace injury and the medical treatment. Watkins v. Halco Eng'g, Inc., 225 Va. 97, 101, 300 S.E.2d 761, 763 (1983).

employer's pre-operative approval of this surgery, followed by employer's post-operative refusal to cover the cost of the surgery, created a substantial imposition on claimant – leaving her with a very large medical bill of over $16,000.[6]

Consequently, much of the evidence before the deputy commissioner related to the nature of Monroe's pre-approval of the March 25, 2010 surgery. Claimant presented a June 16, 2010 letter from Dr. Chhabra to claimant's counsel, in which the doctor stated:

> In response to your letter regarding Ms. Jenkins' surgical intervention on March 25, 2010, attached to your letter is pre-authorization approval from Nasha Monroe from Erie Insurance. *The procedure was performed after pre-authorization was obtained from this insurance company.* If this was an error, please take this up with the insurance company but we would expect payment from the surgery provided as we had pre-authorization.

(Emphasis added). Dr. Chhabra also indicated in a sworn affidavit that he performed the March 25, 2010 surgery pursuant to "authorization obtained from Nasha Monroe on 3/5/10." In addition, as noted *supra*, the commission record contains a document from Dr. Chhabra's billing office indicating that the doctor's treatment of claimant had been "APPROVED PER NASHA MONROE" on March 5, 2010.

Furthermore, claimant's testimony at the evidentiary hearing before the deputy commissioner largely concerned her recollection of the February 16, 2010 telephone conversation with Monroe. Claimant testified that Monroe indicated during this conversation

---

[6] Employer did not object to claimant's assertion in the commission that claimant should not be held responsible for the medical bills related to the March 25, 2010 surgery even if it was determined that employer was not liable to pay for those medical bills. However, the deputy commissioner found that "the requested action exceeds my jurisdiction," and this issue was never presented to the full commission. Furthermore, during oral argument in this Court, employer appeared to contend for the first time on appeal that claimant's medical provider cannot now "balance bill" claimant for the outstanding balance of the March 25, 2010 surgery. See Code § 65.2-714(D). However, we decline to consider employer's new, apparent argument on this point since it was never raised in, or considered by, the commission. See Rule 5A:18; see also Hodnett v. Stanco Masonry, Inc., 58 Va. App. 244, 253, 708 S.E.2d 429, 434 (2011).

that the upcoming surgery with Dr. Chhabra was approved. When asked by her counsel whether Monroe said that this approval was "conditional" or "contingent on anything," claimant replied, "No, sir." Claimant testified that *she would not have undergone the March 25, 2010 surgery without Monroe's prior approval*, adding that she "couldn't have afforded it."[7]

At her deposition, Monroe testified that she only "conditionally approved surgery for treatment that was causally related to [claimant's] original injury" and she denied providing unconditional approval for the surgery during the February 16, 2010 telephone conversation with claimant or in any communications with Dr. Chhabra's billing office.

Concerning the February 16, 2010 telephone conversation with claimant, Monroe testified that she knew that claimant was contemplating surgery with Dr. Chhabra at the time of this conversation. Monroe testified that the purpose of the conversation was not to provide the insurance carrier's approval for any surgery – and instead explained that the conversation reflected the normal procedure of maintaining communication with a claimant who has an open medical benefits award. Monroe stated that she did not know that the surgery related to claimant's rheumatoid arthritis (rather than claimant's compensable wrist injury) until after the surgery occurred. Furthermore, Monroe denied knowing that claimant suffered from rheumatoid arthritis at the time of the February 16, 2010 telephone conversation with claimant. However, Monroe acknowledged that she had access to a file with claimant's medical records and could not recall "actually reviewing [claimant's] medical records" until after the surgery occurred.

Monroe also testified that it is the "normal practice" to give conditional approval when a claimant's medical provider requests approval for upcoming medical treatment. Monroe testified that she gave conditional approval for claimant's surgery to an individual named Karen Painter,

---

[7] Claimant testified that she did not have private health insurance at the time of the March 25, 2010 surgery and that she did not become eligible to receive Medicare benefits until a week after the surgery occurred.

whom Monroe's claims management note for March 4, 2010 identifies as the medical provider contact for Dr. Chhabra's office. However, Painter's own recollection of the nature of Monroe's approval of the surgery was never made a part of the commission record. The parties agreed that it was unnecessary to depose Painter, and employer never proffered what it expected her testimony would have been.

Reversing the ruling of the deputy commissioner, the full commission unanimously found that it was appropriate to hold employer responsible for the cost of the March 25, 2010 surgery under the specific facts of this case. The commission noted that an employer is generally not required "to pre-approve medical treatment." However, the commission continued, when an employer does provide pre-approval for medical treatment, "the claimant and the healthcare provider rely on this preauthorization." In this case, the commission found:

> While Monroe stated that she only provided "conditional" preauthorization in this case, and that her normal practice was to conditionally approve procedures when physicians called seeking approval, *this was certainly not made clear to the claimant or the healthcare provider, both of whom relied on the insurer's representations to their detriment in going forward with the surgery.*

(Emphasis added). Accordingly, the commission ordered employer to "pay the bills submitted by the claimant related to the March 25, 2010, surgery."

## II. ANALYSIS

The Workers' Compensation Act (the Act) grants the commission with the authority, *inter alia*, to "adjudicate issues and controversies relating thereto" and "to enforce compliance with its lawful orders and awards." Code § 65.2-101(A). Commenting on the nature of the commission's jurisdiction, the Supreme Court held over six decades ago, "It seems to us that when the General Assembly established the Industrial Commission for the summary disposition of cases arising out of industrial accidents, it intended that that tribunal should have jurisdiction

to do full and complete justice in each case." Harris v. Diamond Const. Co., 184 Va. 711, 720, 36 S.E.2d 573, 577 (1946). The Supreme Court explained in Harris that the commission is empowered "to protect itself and its awards from fraud, *imposition* and mistake." Id. (emphasis added).

Scope of the Doctrine of Imposition

Consistent with the Supreme Court's holding in Harris, the doctrine of imposition "grants the Commission 'jurisdiction to do full and complete justice in each case.'" Washington v. UPS of Am., 267 Va. 539, 546, 593 S.E.2d 229, 232 (2004) (quoting Harris, 184 Va. at 720, 36 S.E.2d at 577); see also Somers, 228 Va. at 734, 324 S.E.2d at 697. To that end, the doctrine of imposition "'empowers the commission in appropriate cases to render decisions based on justice shown by the total circumstances even though no fraud, mistake or concealment has been shown.'" Odom v. Red Lobster # 235, 20 Va. App. 228, 234, 456 S.E.2d 140, 143 (1995) (quoting Avon Products, Inc. v. Ross, 14 Va. App. 1, 7, 415 S.E.2d 225, 228 (1992)).

On appeal, employer argues that the doctrine of imposition is wholly inapplicable here, given claimant's stipulation before the deputy commissioner that her need for the March 25, 2010 surgery was not causally related to her February 2003 compensable injury. Noting that it would not ordinarily be required to pay for the cost of the March 25, 2010 surgery under Code § 65.2-603 (since the March 25, 2010 surgery was not casually related to claimant's compensable injury), employer claims that holding it responsible for the cost of the March 25, 2010 surgery under the doctrine of imposition is not "warranted under the Act." See Butler v. City of Virginia Beach, 22 Va. App. 601, 605, 471 S.E.2d 830, 832 (1996) (explaining that the doctrine of imposition "focuses on . . . an unjust deprivation to the employee of benefits warranted under the Act"). Employer places great significance on language from this Court's opinion in Butler, claiming that holding it responsible for the cost of the March 25, 2010 surgery

- 8 -

would not be "warranted under the Act" because claimant stipulated before the deputy commissioner that the required causal relationship under Code § 65.2-603 between this surgery and claimant's compensable injury was not established.

However, the Supreme Court specifically held in Harris that the commission has "the power and authority not only to make and enforce its awards, but to protect itself *and its awards* from fraud, *imposition* and mistake." Harris, 184 Va. at 720, 36 S.E.2d at 577 (emphasis added); see Bogle Development Co. v. Buie, 250 Va. 431, 434, 463 S.E.2d 467, 468 (1995) (describing "the authority of the Commission to enforce its orders and to resolve coverage and payment disputes"). At all times relevant to this appeal, there was an open award of medical benefits to claimant. Claimant sought a hearing in the commission on the basis of this medical benefits award. Under Harris, which is, of course, Supreme Court precedent that is binding on this Court, the commission was authorized not only to *enforce* this award – but was also authorized to *protect* this medical benefits award "from fraud, *imposition* and mistake." Harris, 184 Va. at 720, 36 S.E.2d at 577 (emphasis added).

Explaining the Harris decision, the Supreme Court actually applied the doctrine of imposition in Somers -- holding that the commission's decision to amend an otherwise binding agreement between Somers and his employer was appropriate because Somers had unknowingly agreed to an unduly low rate of average weekly wage compensation that had been calculated and presented by his employer. See Somers, 228 Va. at 734-35, 324 S.E.2d at 697. Furthermore, in both Odom and in Ross, this Court applied the doctrine of imposition in holding that the expiration of the statute of limitations for filing a workers' compensation claim should not bar those employees' rights to recovery because their employers had represented to them that nothing further needed to be done to file their claims. See Odom, 20 Va. App. at 235, 456 S.E.2d at 143-44; Ross, 14 Va. App. at 7, 415 S.E.2d at 228; see generally Hampton Inn &

Selective Ins. Co. of Am. v. King, 58 Va. App. 286, 299-300, 708 S.E.2d 450, 456-57 (2011) (providing further explanation of the circumstances supporting the application of the doctrine of imposition in Somers, Odom, and Ross).

These decisions from the Supreme Court and from this Court reflect that, *under the appropriate circumstances*, the doctrine of imposition may be invoked when a matter arises under the commission's subject matter jurisdiction and when a completely rigid application of the Act's provisions would create an injustice based on the conduct of the other party and the specific facts of the case.  See Washington, 267 Va. at 546, 593 S.E.2d at 232 (explaining that the doctrine of imposition "grants the Commission jurisdiction to do full and complete justice in each case" (internal quotation marks and citation omitted)); see also Overhead Door Co. v. Lewis, 29 Va. App. 52, 60, 509 S.E.2d 535, 538-39 (1999) ("The doctrine of imposition focuses on a party's or the commission's use of superior knowledge of, or experience with, the Act or use of economic leverage, which results in an unjust deprivation of benefits under the Act or an unjust application of the Act's provisions." (internal quotation marks and alterations omitted)).

To be sure, decisions from the Supreme Court and from this Court discussing the doctrine of imposition establish that this remedy should be applied very sparingly and *only* when the party alleging an imposition has satisfied the required "'threshold showing of unfairness.'"  Miller v. Potomac Hosp. Found., 50 Va. App. 674, 687, 653 S.E.2d 592, 598 (2007) (quoting Tuck v. Goodyear Tire & Rubber Co., 47 Va. App. 276, 285, 623 S.E.2d 433, 437 (2005)).

> The key to meeting this threshold showing of unfairness is for the party arguing in favor of using the doctrine of imposition to show a series of acts by the opposing party or the commission upon which the party naturally and reasonably relies to his or her detriment. Thus, the issue is whether under the totality of the circumstances shown, the actions of [one party] created an imposition on the commission and the [other party] which empowered the commission [to] do full and complete justice.

King, 58 Va. App. at 298, 708 S.E.2d at 456 (internal quotation marks and citations omitted) (alterations in original); see also Butler, 22 Va. App. at 605, 471 S.E.2d at 832 ("[T]his Court has found that the doctrine [of imposition] applies where, *inter alia*, the record shows a series of acts by the employer or the commission upon which a claimant naturally and reasonably relies to his or her detriment."). Based on the specific circumstances (and rather unusual facts) in this particular case, which must be viewed in the light most favorable to claimant (as the prevailing party in the commission), we agree with the commission that claimant established the required unfairness in this particular case.

### *Conditional* Approval Was Not Clearly Communicated

As the commission noted, employer was not required to pre-approve Dr. Chhabra's treatment of claimant. The Act does not require pre-approval by employers, and, thus, the commission has not instituted such a requirement on employer. On the other hand, there is no statute, commission rule, or case law forbidding employers from pre-approving medical treatment.

Here, Monroe testified that it is the "normal practice" of employer's insurance carrier to give *conditional* approval for medical treatment when it is requested by a medical provider. When *conditional* approval is given, medical treatment of the claimant proceeds with the provider having received conditional assurance of payment as long as the treatment is causally related to a compensable injury. *Conditional* approval, therefore, strikes a reasonable balance between a claimant's interest in receiving needed medical treatment, by assuring a medical provider that, at least, conditional approval for payment has been given, and an employer's interest in protecting itself from further liability under the Act for medical treatment beyond the conditions of approval.

However, in this case, the commission made a factual finding that the conditional aspect of Monroe's approval of the March 25, 2010 surgery was never clearly communicated to claimant *or* to Dr. Chhabra. This factual finding is binding on appeal because it is certainly not plainly wrong or unsupported by the evidence. See Code § 65.2-706(A) (stating that the commission's findings of fact are "conclusive and binding"); Diaz v. Wilderness Resort Ass'n, 56 Va. App. 104, 114, 691 S.E.2d 517, 522 (2010) ("[W]e must defer to the commission's findings of fact if supported by credible evidence in the record.").

Indeed, the record on appeal provides ample support for the commission's factual finding here. Claimant testified that Monroe never said during the February 16, 2010 telephone conversation that approval of the March 25, 2010 surgery was "conditional" or "contingent on anything." Furthermore, the commission record contains both a letter and a sworn affidavit from Dr. Chhabra that approval for the surgery was given by Monroe on March 5, 2010. Moreover, the commission record also contains a document from Dr. Chhabra's billing office, which has the notation *"030510 APPROVED PER NASHA MONROE."* (Emphasis added). None of this evidence, which must be viewed in the light most favorable to claimant (as the prevailing party below), indicates that Monroe's approval of the March 25, 2010 surgery was described as conditional.

In addition, while Monroe testified that she gave conditional approval for the March 25, 2010 surgery to Karen Painter (an employee in Dr. Chhabra's office), the commission record contains no testimony or affidavit from Painter describing the nature of the approval that was given. Employer elected not to depose Painter or to proffer any expected testimony from her.

On appeal, "the burden is on the appellant" – here, employer and its insurance carrier – "to present to us a sufficient record from which we can determine whether" the commission "has erred in the respect complained of." Patterson v. City of Richmond, 39 Va. App. 706, 717, 576

- 12 -

S.E.2d 759, 765 (2003); see Justis v. Young, 202 Va. 631, 632, 119 S.E.2d 255, 256-57 (1961).

On this record, the most that can be said is that Monroe may have *intended* to give conditional approval for the March 25, 2010 surgery. However, communication involves both a sender *and* a recipient. The record supports the commission's conclusion that neither claimant nor Dr. Chhabra was aware that Monroe's approval of the surgery was conditional because Monroe did not clearly communicate to either claimant or Dr. Chhabra (or his employee, Karen Painter) that the approval was conditional. Furthermore, no documentary evidence in the record compels a conclusion that *conditional* approval was ever communicated by Monroe or any other representative of employer's insurance carrier before the surgery actually occurred.

### Claimant Detrimentally Relied on Employer's Approval of the Surgery

In addition, claimant testified that she would not have gone ahead with the surgery on March 25, 2010 if Monroe had not already approved the surgery. Claimant explained that she "couldn't have afforded it" otherwise. Thus, claimant clearly relied on Monroe's approval of the surgery during the February 16, 2010 telephone conversation.

Therefore, the evidence establishes that: (1) Monroe pre-approved the March 25, 2010 surgery without clearly communicating that the approval was conditional and that (2) claimant relied on Monroe's representation that the surgery was approved when she decided to go ahead with the surgery on that date. Claimant's natural and reasonable reliance on this approval of the surgery[8] then proved detrimental to her when – *after the surgery had already occurred* – employer reversed course and refused to cover the cost of the surgery. See Butler, 22 Va. App. at 605, 471 S.E.2d at 832 (noting that an imposition may occur when the claimant "naturally and reasonably relies" on the employer's acts "to his or her detriment").

---

[8] Dr. Chhabra's sworn affidavit establishes that he too relied on Monroe's approval of the March 25, 2010 surgery.

<u>Employer's Post-Operative Refusal to Cover the Surgery Constituted an Imposition</u>

In addition, it is especially noteworthy that employer's insurance carrier could evidently have easily determined *before the surgery even occurred* that the reason for the March 25, 2010 surgery was not causally related to claimant's February 2003 compensable injury. Monroe's testimony establishes that employer's insurance carrier had a file containing claimant's relevant medical records. Although this particular file was not made a part of the record on appeal, the record does show from the medical evidence admitted at the deputy commissioner's evidentiary hearing that claimant had received treatment for rheumatoid arthritis since 2007 and that Dr. Chhabra had been treating claimant for that condition since at least January 6, 2010. However, Monroe acknowledged during her deposition that she could not recall "actually reviewing [claimant's] medical records" when she approved the March 25, 2010 surgery. Thus, there is no evidence in the record that Monroe even looked at the insurance carrier's file of claimant's relevant medical records at the time of the February 16, 2010 telephone conversation with claimant or when she gave approval for the surgery to Dr. Chhabra's office. Furthermore, although Monroe was in contact with Dr. Chhabra's office, the commission aptly noted that Monroe "did not ask Dr. Chhabra or anyone else before approving the surgery, if he thought it was causally related" to claimant's compensable wrist injury from February 2003.[9] Given that Monroe did not review claimant's file or ask Dr. Chhabra's office about the purpose of claimant's upcoming surgery, it is unsurprising that Monroe testified at her deposition that she

---

[9] On appeal, employer notes that "the doctrine of imposition does not apply where a carrier's or employer's acts are consistent with an endeavor to comply with the Act." <u>Odom</u>, 20 Va. App. at 234, 456 S.E.2d at 143. However, employer never argued in the commission that its acts or its insurance carrier's acts were consistent with an endeavor to comply with the Act. <u>See</u> Rule 5A:18. To the extent that the commission's opinion implicitly rejects such an assertion, the commission's conclusion is neither plainly wrong nor unsupported by the evidence.

was not aware of claimant's treatment for rheumatoid arthritis until *after* the March 25, 2010 surgery had actually occurred.

Dr. Chhabra's response to employer's questionnaire concerning the surgery – which was directed to the doctor *after* the March 25, 2010 surgery occurred – established that this surgery was related to claimant's rheumatoid arthritis and was not related to claimant's compensable February 2003 injury to her wrist. There is absolutely no indication from the record that Dr. Chhabra's opinion would have been any different if employer had asked for his opinion *before* the surgery occurred. On the contrary, Dr. Chhabra's pre-operative notes plainly establish that the March 25, 2010 surgery was required to treat claimant's rheumatoid arthritis. Employer's insurance carrier certainly could have taken the necessary steps to investigate the issue of causation prior to the March 25, 2010 surgery, but it simply did not do so.

Simply put, under the facts of this case, neither claimant nor Dr. Chhabra should be held responsible for employer's own belated discovery that the March 25, 2010 surgery was not causally related to claimant's compensable injury. Acting on behalf of employer's insurance carrier, Monroe pre-approved the surgery, and the commission found that Monroe simply failed to clearly communicate that this approval was conditional. To permit employer to rescind its approval of the March 25, 2010 surgery in this case – where the commission found that *conditional* approval was never clearly communicated – would be plainly unfair to both claimant and to Dr. Chhabra. A claimant and his or her medical provider must be able to rely on approval for medical treatment as it is communicated by the employer's insurance carrier.

The doctrine of imposition applies in those rare cases when one party has (and uses) "the upper hand" to such an extent that the other party is subjected to an injustice. See Somers, 228 Va. at 735, 324 S.E.2d at 697 (explaining that the employer unfairly exercised its "upper hand" over Somers). In light of all of the circumstances in this particular case, employer's

- 15 -

post-operative decision to refuse coverage of the March 25, 2010 surgery – which it had already approved, without clearly communicating any conditions to claimant or her medical provider – amounted to a plainly unfair use of its superior economic leverage over claimant. See Butler, 22 Va. App. at 605, 471 S.E.2d at 832 (explaining that imposition focuses on one party's use of superior knowledge of the Act or economic leverage to the detriment of the other party).

Accordingly, on these specific facts, we agree with the commission that it had authority to "do full and complete justice" and to hold employer responsible for the cost of the March 25, 2010 surgery because employer's actions (and lack of due diligence in even reviewing claimant's file) resulted in a significant imposition on claimant. Somers, 228 Va. at 734, 324 S.E.2d at 697.

### III. CONCLUSION

The commission did not err in finding that employer's pre-approval of claimant's March 25, 2010 surgery – followed by employer's subsequent refusal to cover the cost of the surgery *after the surgery had occurred* – was plainly unfair to claimant and resulted in a clear imposition on her. While the doctrine of imposition should be invoked only in rare cases, the commission did not err when it unanimously applied the doctrine here under the specific facts of this case to hold employer responsible for the cost of the March 25, 2010 surgery. Accordingly, we affirm the commission's decision in this case.

Affirmed.